NOT DESIGNATED FOR PUBLICATION

No. 112,550

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN F. WHEELER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN and JOSEPH BRIBIESCA, judges. Opinion filed January 22, 2016. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and STANDRIDGE, JJ.

*Per Curiam*:  Juan F. Wheeler appeals the district court's decision to deny his motions to withdraw guilty pleas in six different cases. Specifically, he argues he sufficiently established the good cause necessary to withdraw his pleas. Wheeler also appeals from the sentences imposed, arguing they are illegal because one of his prior convictions was misclassified as a person felony. Finally, he argues that the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by sentencing him based on a criminal history score that was not proved to a jury beyond a reasonable doubt.

1

FACTS

This case involves a plea agreement affecting six cases filed against Wheeler in Sedgwick County.

In 12-CR-3136, Wheeler was charged with one count of possession of marijuana after a prior conviction, one count of possession of drug paraphernalia, and one count of driving while his license was suspended.

In 13-CR-6, Wheeler was charged with one count of refusing to submit to a test to determine the presence of alcohol or drugs, one count of driving while a habitual violator, and one count of failing to maintain a single lane.

In 13-CR-550, Wheeler was charged with one count of possession of a controlled substance, one count of driving while his license was suspended, and one count of driving with no head lamps.

In 13-CR-870, Wheeler was charged with one count of driving under the influence (DUI), one count of driving while a habitual violator, one count of failing to maintain a single lane, one count of speeding, and one count of driving without insurance.

In 13-CR-1699, Wheeler was charged with one count of possession of marijuana after a prior conviction, one count of driving while a habitual violator, and one count of defective wipers or obstructed windshield or windows.

In 13-CR-2267, Wheeler was charged with one count of refusing to submit to a test to determine the presence of alcohol or drugs, one count of driving while a habitual violator, one count of refusing a preliminary breath test, and one count of failing to have an operable license tag light.

Wheeler entered into a plea agreement with the State to resolve all of the cases listed above. He signed a written document entitled Defendant's Acknowledgment of Rights and Entry of Plea as well as a written plea agreement. As part of the plea agreement, the State agreed to dismiss the charge of failing to maintain a single lane in 13-CR-6; the charge of driving with no head lamps in 13-CR-550; the charges of failing to maintain a single lane, speeding, and driving without insurance in 13-CR-870; the defective wipers or obstructed windshield or windows count in 13-CR-1699; and the charge of failing to have an operable license tag light in 13-CR-2267. Wheeler agreed to plead guilty to all other charges; and the State agreed, in addition to dismissing the charges above, to recommend a controlling prison sentence of 64 months.

A plea hearing was held on September 16, 2013. At the hearing, Wheeler confirmed that he understood the charges against him in all six cases and that he had ample time to speak to his attorney about the cases. He specifically stated that his attorney had not forced him to enter his pleas. He also stated that he read and understood all of the information in the Defendant's Acknowledgement of Rights and Entry of Plea and plea agreement documents. After engaging in a colloquy with Wheeler, the district court judge found Wheeler understood his rights and the consequences of his pleas. The district court accepted Wheeler's pleas and convicted him of all counts to which he pled guilty.

After he was convicted but before he was sentenced, Wheeler filed a pro se motion to withdraw his pleas. He also filed a separate pro se motion asking the court to appoint him new counsel or, in the alternative, to allow him to proceed pro se. Wheeler alleged ineffective assistance of counsel as the basis for both motions. Wheeler's attorney later filed another motion to withdraw pleas. In this motion, Wheeler alleged that he was not guilty of the offenses charged against him and that the terms of the plea agreement were misrepresented to him by his attorney. The court ultimately appointed Wheeler new

3

counsel, and a hearing on Wheeler's motion to withdraw his pleas was held on November 22, 2013.

Wheeler was the first to testify at the hearing. Wheeler explained that he was originally represented by another attorney on one of these cases and that his original attorney had negotiated a plea deal of 2 days in jail, 88 days of house arrest minus jail credit, and a $2,300 fine. Wheeler testified he believed the plea offer incorporated all of his pending cases except 13-CR-2267. Wheeler said that although he told his attorney to accept that plea deal, he knew he had never formally entered into a plea deal with those conditions, either in written form or in the presence of the district court. Wheeler did, however, acknowledge that he formally entered the guilty pleas that currently are subject to his motion to withdraw as part of a different plea agreement. He testified he met with his attorney, Jama Mitchell, before entering his pleas. His plea hearing was on a Monday, and Mitchell visited him to discuss the plea agreement on the previous Wednesday and Friday. She gave him copies of the Defendant's Acknowledgement of Rights and Entry of Plea and plea agreement. Wheeler testified that although he has problems reading, he did not tell Mitchell about these problems. He later acknowledged, however, that Mitchell had actually read the plea agreement out loud to him.

After Mitchell read the plea agreement to him, Wheeler originally wanted to take the cases to trial. But Wheeler said Mitchell told him that if he took the cases to trial, he could face anywhere from 96 to 120 months in prison. Wheeler also testified that Mitchell told him no one would believe his statements over those of police officers. Mitchell advised him that his best bet was to take the plea deal and, if he did, Mitchell would get him out of jail until sentencing.

Next, Wheeler testified that he did not understand the plea agreement when Mitchell explained it to him. But Wheeler did not tell the district court judge during his plea hearing that he did not understand the terms and conditions of the plea agreement.

4

Wheeler also alleged that he was on blood pressure medication during the plea hearing that interfered with his understanding of the proceeding and his ability to effectively communicate during the hearing. In support of this particular allegation, Wheeler cites to a point during the plea hearing when the district court judge asked Wheeler if he was guilty of two DUI convictions occurring in 2003 and 2007. Wheeler testified at the hearing on the motion to withdraw his pleas that he turned to Mitchell and told her that he was not convicted of those charges but Mitchell told him to say "yes" anyway. He said Mitchell told him that if the district attorney could not prove those convictions, he would drop down to a probation box and be home by the end of the week. Wheeler also stated that Mitchell told his wife Mitchell would get him probation, though he also acknowledged that his written plea agreement called for a prison sentence.

Mitchell was the only other witness that testified at the hearing. Mitchell said that Wheeler first became her client in March 2013. After all six of the cases that are the subject of this appeal were filed in district court, Mitchell requested a plea agreement from the State that would resolve all of the cases. She met with Wheeler at least three times. She said they discussed the plea, the consequences of the plea, and the consequences of trying the cases individually. Mitchell testified she never promised Wheeler he would be released from custody if he entered pleas in his cases. To the contrary, Mitchell said she explained to Wheeler that the district court judge would decide whether he would be released. She also said she never promised Wheeler would get probation.

As to the prior plea offer mentioned by Wheeler, Mitchell testified the previous plea bargain Wheeler alleged he had accepted was a plea deal that involved only one single case. That case was dismissed and ultimately refiled as 13-CR-870. When Mitchell was asked why she did not try to get that deal reinstated, she said that five additional cases had been filed against Wheeler, so the original plea agreement was no longer available. Regarding Wheeler's cognitive abilities, Mitchell testified that she had no

5

concerns about his competency and that he never told her he did not understand what was going on.

Mitchell also testified that she had filed a motion contesting all prior DUI convictions, battery convictions, and person misdemeanor convictions listed in his presentence investigation report because Wheeler did not believe he had been convicted of all the charges in the report. She stated that she made every effort to force the State to prove those prior convictions. She said she did not specifically recall whether Wheeler told her during the plea hearing that he was not convicted of the two prior DUI's he was asked about at the hearing.

After the parties made closing arguments, the district court judge asked for clarification from Wheeler's attorney to state the grounds upon which Wheeler believed the plea agreement was misrepresented to him. After consulting with Wheeler, Wheeler's attorney responded that Wheeler believed the misrepresentation began when Wheeler told Mitchell at the plea hearing that he was not convicted of two prior DUI's. Wheeler believed Mitchell misrepresented the plea agreement to him when she advised him during the plea hearing to tell the court that he had been convicted of those two prior DUI's when he had just advised her that he had not been convicted of those DUI's. After further discussion and a review of Wheeler's presentence investigation report, the district court found that the facts alleged by Wheeler did not allege a misrepresentation on Mitchell's part but rather alleged a disagreement between Wheeler and Mitchell about whether he had been convicted of the prior DUI offenses referenced at the plea hearing. To that end, the district court noted that the presentence investigation report readily established that—contrary to Wheeler's position—he actually had been convicted of the prior DUI offenses. The district court ultimately found Wheeler made a mistake in recalling his criminal history.

Addressing Wheeler's assertions that Mitchell promised him that she would get him released from jail prior to sentencing and that she would get him probation, the district court found that no promises were made by Mitchell to Wheeler. At the end of the hearing, the district court judge said, "Based on the evidence presented, it sounds like Ms. Mitchell was doing her best to get the best deal for Mr. Wheeler that she could. Because if these cases were dealt with individually, in all likelihood Mr. Wheeler would be going away for a long, long, long, long time." The district court filed a journal entry denying the motion to withdraw Wheeler's pleas for the reasons stated on the record.

Based on a criminal history score of B, Wheeler was sentenced to a controlling prison term of 56 months as well as a consecutive 6-month term in the county jail.

ANALYSIS

*Motion to withdraw pleas*

Under K.S.A. 2014 Supp. 22-3210(d)(1), a guilty or no-contest plea may be withdrawn "for good cause shown and within the discretion of the court" at any time before the sentence is adjudged. This court will not disturb a district court's decision to deny a defendant's presentence motion to withdraw a plea unless the defendant establishes that the district court abused its discretion. *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (2012). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 106, *cert. denied* 134 S. Ct. 162 (2013). A decision is arbitrary, fanciful, or unreasonable when no reasonable person would have taken the view of the district court. *State v. Wilson*, 301 Kan. 403, 405, 343 P.3d 102 (2015).

7

When considering whether good cause has been shown, Kansas courts consider the following factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). "These factors should not, however, be applied mechanically and to the exclusion of other factors." 299 Kan. at 154.

Wheeler argues on appeal that the district court abused its discretion in two distinct ways. Although conceding the district court made several factual findings in support of its decision to deny his motion to withdraw pleas, Wheeler first argues that the district court abused its discretion by failing to articulate or acknowledge in any way what legal standard it used to deny the motion to withdraw his pleas. "A district judge's failure to apply the correct legal standard under K.S.A. 22-3210(d) in a plea withdrawal hearing is an abuse of discretion." *State v. Aguilar*, 290 Kan. 506, Syl. ¶ 2, 231 P.3d 563 (2010).

In support of his argument, Wheeler cites the Kansas Supreme Court's holding in *Aguilar*. In that case, Aguilar sought to withdraw her plea prior to sentencing by alleging, in part, that her attorney had a conflict of interest stemming from his simultaneous representation of Aguilar and her codefendant. The district court judge denied the motion, generally finding that "'I've had [defense counsel] in this courtroom a lot of times. I think he does a good job.'" 290 Kan. at 510. The Kansas Supreme Court reversed. It found that the district court judge had abused his discretion because, in denying Aguilar's motion to withdraw her plea, the district court judge "exhibited no awareness of the governing legal standards" and "gave no indication that he correctly applied those standards." 290 Kan. at 515. Specifically, the Supreme Court noted that the district court wholly failed to address the alleged conflict of interest. The Supreme Court went on to find that an insurmountable conflict of interest existed and remanded the case with directions to allow Aguilar to withdraw her plea. 290 Kan. at 515.

Wheeler contends that *Aguilar* stands for the proposition that "the failure to explicitly apply the appropriate legal standard" constitutes an abuse of discretion requiring reversal. Based on this contention, Wheeler argues that, under *Aguilar*, the district court abused its discretion here because it never specifically articulated that it was using the good-cause standard outlined in K.S.A. 2014 Supp. 22-3210(d)(1).

We find Wheeler's argument misstates the holding in *Aguilar*. Our Supreme Court found in *Aguilar* that it is an abuse of discretion to fail to *apply* the correct legal standard under K.S.A. 22-3210(d). 290 Kan. 506, Syl. ¶ 2. It did not find that it is an abuse of discretion to fail to *recite* that legal standard. In addition, *Aguilar* is distinguishable from this case. In *Aguilar*, the district court failed to make any findings relating to Aguilar's conflict of interest argument. The Kansas Supreme Court later found that this argument was not only meritorious but that the conflict of interest alleged by Aguilar existed and was insurmountable. It also noted that facts supporting Aguilar's conflict argument were ignored. 290 Kan. at 515. In contrast, Wheeler does not allege in this case that the district court ignored any of his arguments. In fact, the record shows that after the parties concluded their arguments at the hearing on Wheeler's motion, the district court specifically asked Wheeler to clarify his claim that the plea agreement was misrepresented to him by Mitchell. Admittedly, the district court judge did not explicitly use the term "good cause" or recite the three factors that should be examined when determining whether good cause exists. But the district court did make factual findings related to the proper factors.

Regarding the first factor—which is whether Wheeler was represented by competent counsel—the district court found that Wheeler merely misunderstood his criminal history and was not actually alleging any misrepresentation on the part of Mitchell. The court also specifically found that Mitchell made no promises to get him released from custody or get him probation. Finally, the court noted that "[b]ased on the

9

evidence presented, it sounds like Ms. Mitchell was doing her best to get the best deal for Mr. Wheeler that she could."

As to whether Wheeler was misled, coerced, mistreated, or unfairly taken advantage of, we find relevant the district court's findings that Mitchell did not make any promises to Wheeler and that he did not actually allege any misrepresentation on Mitchell's part. Further, the district court noted Wheeler advised the court at his plea hearing that Mitchell did not force him into the plea.

Finally, as to whether the plea was fairly and understandingly made, the district court found Wheeler had experience with the criminal justice system and that Wheeler's testimony at the hearing on the motion to withdraw established that he had an accurate understanding of legal concepts. Given that the district court's findings were consistent with the proper good-cause standard, we are not persuaded by Wheeler's argument that the district court abused its discretion by failing to apply that standard.

Next, Wheeler argues that even if this court assumes the district court utilized the proper standard, he established good cause to withdraw his pleas; thus, the district court abused its discretion in denying his motion to do so. In support of this argument, Wheeler first claims his pleas were not understandably made because he did not realize the extent to which his prior DUI convictions would elevate his sentence. It appears Wheeler is referring to the fact that DUI charges can only be felonies if a person has at least two prior convictions. See K.S.A. 2014 Supp. 8-1567(b)(1)(D)-(E). But he did not make this particular argument below. And even if he did, this argument is undercut by the fact that Wheeler's written plea agreement clearly indicated that he was pleading to a felony DUI count in 13-CR-870.

Wheeler also attempts to support his good-cause argument by citing his own testimony given at the hearing on his motion to withdraw that alleged Mitchell promised

him that she would get him probation. But the district court specifically found that Mitchell did not make this promise. The court's factual finding in this regard was supported by Mitchell's testimony and by the written plea agreement Mitchell read to Wheeler, which he later signed, which specifically stated that Mitchell was going to get a prison sentence.

In a final attempt to show that he established good cause, Wheeler argues he was coerced by Mitchell, against his will, into accepting the plea agreement. To find that a defendant was improperly coerced into accepting a plea, a district court must determine that the defendant was prevented from exercising his or her free will in the decision to plead. See *Macias-Medina*, 293 Kan. at 838. Notably, Wheeler does not provide any facts to support his argument regarding coercion. And given Wheeler clearly expressed at the plea hearing that he did not feel coerced, a reasonable person could agree with the district court's decision to deny his motion to withdraw his pleas.

Ultimately, Wheeler has failed to establish that the district court's decision was based on an error of fact or law or that it was arbitrary, fanciful, or unreasonable. Therefore, we find Wheeler did not meet his burden to show that the district court abused its discretion in denying his motion to withdraw his pleas.

*Criminal history*

In his second point of error, Wheeler argues the court imposed an illegal sentence based on misclassification of his 1992 battery conviction as a person felony. Wheeler raises this issue for the first time on appeal. Generally, issues not raised to the district court may not be raised on appeal. *State v. Brown*, 300 Kan. 565, 590, 331 P.3d 797 (2014). But K.S.A. 22-3504(1) states that "the court may correct an illegal sentence at any time." Our Supreme Court has found that under K.S.A. 22-3401(1), a defendant may challenge the classification of his or her prior convictions for the first time on appeal.

11

*State v. Dickey*, 301 Kan. 1018, Syl. ¶ 3, 350 P.3d 1054 (2015), *petition for cert. filed* September 17, 2015.

Wheeler's criminal history included a 1992 conviction for battery in Sedgwick County that was scored as an "adult misdemeanor conversion." Under K.S.A. 2014 Supp. 21-6811(a), three prior adult convictions for class A or B person misdemeanors shall be rated as one adult conviction for a person felony. This means that Wheeler's 1992 battery conviction was scored as a person crime. Wheeler argues that this conviction should have been scored as a nonperson crime for the purposes of determining his sentence.

Wheeler relies entirely on *State v. Murdock*, 299 Kan. 312, 314, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014, *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *petition for cert. filed* November 25, 2015. In *Murdock*, the Kansas Supreme Court found that when calculating a defendant's criminal history, all out-of-state crimes committed prior to the enactment of the Kansas Sentencing Guidelines Act in 1993 must be classified as nonperson offenses. 299 Kan. 312, Syl. ¶¶ 4-5. Wheeler argues that the rationale of *Murdock* applies to his pre-1993 in-state battery conviction as well, requiring that it be scored as a nonperson offense.

But while this appeal was pending, *Murdock* was explicitly overturned by the Kansas Supreme Court in *Keel*, 302 Kan. at 560, Syl. ¶ 9. Under *Keel*, classification of a prior in-state conviction must be based on the classification in effect for the comparable offense when the current crime of conviction was committed. 302 Kan. at 560, Syl. ¶¶ 8-9. This ruling is consistent with recent amendments to the statute governing classification of Kansas offenses for criminal history purposes. See L. 2015, ch. 5, secs. 1-5.

Due to these recent changes, Wheeler's argument that the rational of *Murdock* must be applied to this case is without merit. The primary offense in Wheeler's presentence investigation report was possession of marijuana after a prior conviction and

it was alleged to have been committed on July 3, 2012. At that time, battery as defined in the Kansas Statutes was a person misdemeanor. K.S.A. 2012 Supp. 21-5413(g)(1). Significantly, Wheeler does not argue in his brief that the battery ordinance he was convicted under in 1992 is not comparable to battery as defined in K.S.A. 2012 Supp. 21-5413. An issue not briefed on appeal is deemed waived and abandoned. *State v. Jones*, 300 Kan. 630, 639, 333 P.3d 886 (2014).

Further, the presentence investigation report indicates that Wheeler's 1992 battery conviction was a violation of a local ordinance. This ordinance is not included in the record on appeal. "The party alleging a trial error has the burden of designating a record that affirmatively shows prejudicial error." *State v. Cervantes-Puentes*, 297 Kan. 560, Syl. ¶ 3, 303 P.3d 258 (2013). Even if we were inclined to engage in an analysis of the comparability of the 1992 battery ordinance and the applicable Kansas statute, Wheeler failed to provide a record that would allow us to do so.

Finally, Wheeler argues that his criminal history was not proved to a jury beyond a reasonable doubt and therefore his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), were violated. He concedes in his brief that the Kansas Supreme Court previously rejected this claim in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2001). But he argues that *Ivory* was wrongly decided and states that he includes this issue to preserve it for possible federal review. Under *Ivory*, this claim fails. See *State v. Barber*, 302 Kan. 367, 386, 353 P.3d 1108 (2015).

Affirmed.