No. 104,159

STATE OF KANSAS, *Appellee*, v. MAURICIO MACIAS-MEDINA, *Appellant.*

(268 P.3d 1201)

Opinion filed February 3, 2012.

*Joanna Labastida*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: After being charged with two counts of rape, Mauricio Macias-Medina entered into a plea agreement that required him to plead guilty to the alternative charges of the offgrid version of aggravated indecent liberties with a child. In return, the State

agreed that it would not oppose a defense request for a departure to the middle number in the sentencing guidelines grid-box for a severity level 3 person felony; that it would recommend that the sentences be served concurrently; and that the defense would be permitted to seek probation. After entering his plea, but before sentencing, Macias-Medina filed a motion to withdraw his guilty pleas, contending that his attorney and his interpreter had coerced him into accepting the plea agreement. In denying the motion to withdraw pleas, the district court found that defendant received competent legal representation; that his pleas were knowingly and intelligently made; that the pleas were not induced by any dishonest interpretation of information; and that defendant's pleas were not coerced. Giving due deference to the district court, as we must, we find that the district court did not abuse its discretion in finding an absence of good cause to permit defendant to withdraw his pleas.

## FACTUAL AND PROCEDURAL OVERVIEW

Macias-Medina was originally represented by an attorney, Steve Wagle, who had the ability to speak Spanish, Macias-Medina's native tongue. Nevertheless, Macias-Medina was also provided an interpreter, Ileana Badillo.

Approximately 1 week before the scheduled trial date, Wagle presented Macias-Medina with a proposed plea agreement. Macias-Medina refused the deal because he did not want to plead guilty. On the morning of trial, after ascertaining that the State was still amenable to a plea arrangement, Wagle suggested to Macias-Medina that the plea agreement might be in his best interest. Wagle, with the assistance of Badillo, conducted a verbatim review with Macias-Medina of the written plea agreement and a document entitled "Defendant's Acknowledgment of Rights and Entry of Plea." Macias-Medina agreed to enter a plea.

At the plea hearing, the district court explained the defendant's rights in great detail; advised the defendant that by pleading guilty he was waiving those rights; and explained the consequences associated with such a waiver. The district court also clearly explained that the plea agreement sentencing recommendations would not

be binding on the sentencing judge, who could impose the maximum legal sentence. Upon inquiry, Macias-Medina advised the judge that he had understood everything the district court discussed regarding his rights and possible sentencing and that he felt that his attorney, Steve Wagle, had provided satisfactory representation. The court was also presented with the Acknowledgment of Rights and Entry of Plea form, which Macias-Medina had signed. That form contained language indicating the defendant's decision to accept the plea agreement had been made "voluntar[ily] without anyone having threatened [him] or promised [him] anything of benefit, and [wa]s without duress or coercion other than that which the plea agreement provides." After Macias-Medina provided a factual basis, the district court accepted his guilty pleas to the two counts of aggravated indecent liberties .

Before sentencing, Macias-Medina filed a motion to withdraw his pleas, contending that both Wagle and Badillo had coerced him into signing the plea agreement. Among other allegations, Macias-Medina said that the interpreter had told him that if he took the plea he would be deported after serving only 2 more years, but that without the agreement he would go to prison for life. Further, he said he was told that the jury panel was composed of racist Caucasians who hate Mexicans because they think them to be aggressive, womanizing drunks. Macias-Medina testified that he felt forced into accepting the plea agreement.

Wagle and Badillo both testified. They both said that it had taken a long time to thoroughly review the plea documents with Macias-Medina, but they both denied intentionally misleading or coercing Macias-Medina. Specifically, Wagle denied referring to the jurors as racists, but he said he did explain that jurors have their own prejudices and that sometimes the truth does not always win in the courtroom. Badillo recalled that after she read the plea agreement and the acknowledgment of plea form to Macias-Medina verbatim, he acknowledged that he understood the contents of those documents when he signed them.

The judge hearing the motion to withdraw plea had presided at the plea hearing. In denying the plea withdrawal motion, the court noted that Macias-Medina's testimony at that hearing "did not

comport with what occurred at the time of plea." Further, the court said:

"I just cannot find from the evidence I've heard here today and from the court file . . . that, in fact, this plea was one that was not knowingly and intelligently made. I cannot make the finding that it was a plea that was in any way caused by the dishonest interpretation of information to him or caused in any way by coercion. It just appears to me that perhaps Mr. Macias has gotten cold feet insofar as his plea."

The district court then proceeded to sentence Macias-Medina in accordance with the plea agreement recommendations by imposing a controlling prison sentence of 59 months. Macias-Medina filed a timely appeal, challenging the district court's refusal to grant his motion to withdraw his guilty plea.

PLEA WITHDRAWAL

A. *Standard of Review*

K.S.A. 2010 Supp. 22-3210(d)(1) provides that a guilty plea may be withdrawn "for good cause shown and within the discretion of the court" at any time before the sentence is adjudged. Based on that statutory language, we have held that "[t]his court will not disturb a district court's decision to deny defendant's presentence motion to withdraw his [or her] guilty plea unless the defendant demonstrates that the judge abused his or her discretion. [Citation omitted]." *State v. Denmark-Wagner*, 292 Kan. 870, 875, 258 P.3d 960 (2011).

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

B. *Analysis*

To begin, we emphasize that this case involves the presentence "good cause" standard, which is "a 'lesser standard' for a defendant to meet, when compared to manifest injustice for a defendant ad-

vancing a post-sentence motion. [Citation omitted.]" *State v. Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 (2010).

A starting point in the consideration of a plea withdrawal request is to look at three factors which have recently been dubbed the "*Edgar* factors" even though they existed in this State's jurisprudence before the eponymous case of *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006). *Aguilar*, 290 Kan. at 511 (factors long predate *Edgar*). For simplicity and clarity, this opinion will continue to use the label "*Edgar* factors."

Recently, we recited the *Edgar* factors as follows: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) whether the plea was fairly and understandingly made." *Aguilar*, 290 Kan. at 511. But we clarified that "[a]ll of the *Edgar* factors need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause." 290 Kan. at 513. Likewise, we cautioned that an exclusive reliance on or mechanical application of the *Edgar* factors could distort the concept of good cause. 290 Kan. at 512-13.

In this appeal, Macias-Medina argues that the first two *Edgar* factors support his claim of good cause to withdraw his plea. He contends that Wagle was incompetent because he "forced" Macias-Medina to accept the plea agreement and, under the second factor, he claims that his attorney and interpreter misled and coerced him into signing the plea agreement and entering his pleas. The State counters that the district court made a credibility assessment, choosing to accept defendant's plea hearing statements over his motion hearing testimony and finding the testimony of the attorney and interpreter more credible than that of the defendant. Accordingly, the State argues that we should defer to the district court's credibility assessment and factual findings. We agree.

In essence, the first question that the district court needed to resolve was whether Wagle and/or Badillo provided Macias-Medina with inaccurate or misleading information upon which to base his decision to plead. See *Wippel v. State*, 203 Kan. 207, 209, 453 P.2d 43 (1969) ("Absent is any showing that his attorney's advice

in respect to the consequences of his pleas was other than accurate, or that petitioner was misled in any way."). As the State notes, the motion hearing witnesses related conflicting versions of what was said to Macias-Medina during the plea agreement discussions. For instance, Macias-Medina said he was told that he would be tried by a jury of racists who disliked Mexicans. In contrast, Wagle said that neither he nor Badillo used the word "racist," and Wagle specifically denied telling his client that the impaneled jurors "are a bunch of white people who hate Mexicans." Rather, Wagle said he explained that one never knows what kind of people are going to make it to the jury box, *i.e.*, whether all the jurors will keep their promise to be fair. Further, he related that the truth is not a guarantee of victory in the courtroom and that innocent people go to prison.

While one might wish Wagle's statements to be dishonest, they are not. The attorney shared the harsh reality that the outcome of a jury trial is determined by what the jurors *believe* the facts to be rather than what the true facts are and that jurors' beliefs are sometimes influenced by human emotions. A defendant should know that reality when making the decision whether to accept a plea agreement with a recommended 5-year prison term or go to jury trial with the risk of a minimum 25-year prison term. Accordingly, we see nothing in the record that would refute the district court's finding that the defendant's plea was not the product of dishonesty or misinformation.

The remaining question is whether Wagle's methods were so coercive as to "force" his client to accept the plea, *i.e.*, whether the attorney prevented his client from exercising free will in the decision to plead. In his brief, Macias-Medina relies almost exclusively on the attorney's statement that the plea discussion the morning of trial lasted 1 hour and 15 minutes, *i.e.*, 75 minutes. He characterizes that time frame as a period during which Wagle "continually attempt[ed] to dissuade Mr. Macias-Medina from going to a jury trial, and to coerce Mr. Macias-Medina to take a plea instead." Such a characterization was contradicted by the testimony of both Wagle and Badillo. They said that during the 75-minute period Wagle read aloud and Badillo interpreted verbatim both the

entire plea agreement and the Acknowledgment of Rights and Entry of Plea form.

Perhaps most importantly for our purposes, the same judge presided at the plea hearing and at the motion to withdraw plea hearing. At the plea hearing, the judge was able to observe Macias-Medina when he stated that he understood the nature of the charges against him; that he understood his rights; that he was entering a plea of his own volition; and that he was not threatened or coerced into entering the plea. Thus, when Macias-Medina testified at the plea withdrawal hearing that he had been misled, coerced, and forced to enter a plea, the judge was able to ascertain that such testimony "did not comport with what occurred at the time of plea," and to draw a conclusion as to which contradictory testimony was more credible. Likewise, the judge had the opportunity to observe the demeanor of the attorney and interpreter when they contradicted Macias-Medina's characterization of the plea discussions.

In sum, the district court was in the best position to resolve conflicts in the testimony and make the determination that Macias-Medina's pleas were knowingly and intelligently made and that they were not "in any way caused by the dishonest interpretation of information to him or caused in any way by coercion." The court did not abuse its discretion in finding that good cause did not exist to permit the withdrawal of the pleas.

Affirmed.