NOT DESIGNATED FOR PUBLICATION

No. 112,442

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON JEROME TAYLOR,
*Appellant*.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed November 6, 2015. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*David A. Page*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam:* A court may allow a defendant to withdraw his plea of no contest prior to sentencing if there is evidence that he was misled, coerced, mistreated, or unfavorably taken advantage of. Jason Jerome Taylor, at first, rejected the proposed plea agreement in this case but after receiving a written copy of the contract 4 days prior to trial and many consultations with his lawyer, signed it on the day of trial. When the court questioned him at the plea hearing later, he denied being threatened or mistreated by anyone and stated he understood the possible results of entering such a plea. Our review of this record leads us to conclude that Taylor made his plea freely and voluntarily.

1

Because we find no evidence that he was taken advantage of in any way, we affirm the district court's denial of his motion to withdraw his plea.

After consulting with his attorney, Taylor made a plea agreement with the State. In exchange for a reduction of the charge—rape, a severity level 1 person felony crime—to aggravated sexual battery, a severity level 5 felony, Taylor agreed to plead no contest to the reduced charge. The State and Taylor recommended to the court that he should receive a 120-month sentence. But, before he was sentenced, Taylor asked to withdraw his plea, claiming he was "pressured" into making it. The court was not convinced by Taylor's argument and sentenced him to serve the recommended sentence of 120 months.

Some details are enlightening and provide a context for our evaluation. David N. Harger was Taylor's attorney. Harger met with Taylor approximately 10 times prior to trial to discuss claims and defenses, answer questions, review evidence, and discuss a plea. In addition, Harger and Taylor talked on the telephone several times.

Harger and Taylor discussed the possibility of a plea agreement from the beginning. At one point, Taylor authorized Harger to offer a plea to misdemeanor sexual battery, but the State rejected the offer. Plea negotiations continued. Eventually, the State placed a deadline on all plea offers. A member of Harger's law firm told Taylor he should take the State's plea offer. Taylor told Harger that he did not want to accept the State's plea offer. However, the State placed the offer back on the table shortly before Taylor's trial. Again, Taylor rejected the offer. Harger continued to prepare for trial. He was evaluating jury questionnaires, reviewing jury instructions, filing 10 pretrial motions, and interviewing a dozen witnesses.

On Friday, January 3, 2014, Harger and Taylor met to discuss jury selection. They again discussed a possible plea. Taylor again rejected the offer. That evening, Harger's investigator, Bryan Weinbrenner, visited Taylor. Weinbrenner told Taylor about a similar

2

rape case, in which there was minimal evidence, but the defendant was convicted. Taylor became fearful of a conviction. Harger visited Taylor again on Saturday morning. Harger and Taylor discussed the various possible outcomes of the trial, including lesser-included offenses to the rape charge. Harger told Taylor that his chance of being acquitted was very small. Taylor remembers Harger saying: "Jason, I think this is what you need to do. I think this is your best bet." This conversation made Taylor feel pressured to accept the offer. Taylor was scared of a possible negative outcome at trial. With Taylor's criminal history, a rape conviction would result in essentially a life sentence.

During that Saturday-morning meeting, Taylor and Harger modified the State's plea offer. The State accepted the modification. Taylor and Harger reviewed the revised plea. Taylor signed an advice form, which outlined the rights that Taylor waived by pleading no contest and the requirement that pleas must be voluntary.

On January 8, Taylor signed a written plea agreement. Taylor agreed to plead no contest to aggravated sexual battery, a severity level 5 person felony. The State agreed to recommend a sentence of 120 months, regardless of whether Taylor's criminal history score was an A or B. A plea hearing was held later that day. Taylor responded, "Yes," that he understood the rights he was waiving by pleading no contest, including the right to present witnesses. And, Taylor told the court his plea was voluntary:

> "THE COURT: Mr. Taylor, has anyone made any threats to you, coerced you in any way
> or made any promises to you, other than the plea agreement, to induce you to enter a plea
> of guilty or no contest to this charge here today?
> "THE DEFENDANT: No.
> "THE COURT: This is your own voluntary act?
> "THE DEFENDANT: Yeah."

When asked if he understood what had transpired at the hearing, Taylor responded, "Yeah." The court accepted Taylor's plea of no contest to aggravated sexual battery and

found that the plea was voluntarily, freely, knowingly, and intelligently made and found him guilty.

Prior to sentencing, Taylor moved to withdraw his plea. He claimed that he was "pressured into acceptance of the plea agreement" and that he had "received new information, after entry of the plea, that caused him to reconsider his decision to enter the plea." A new attorney was appointed to represent Taylor due to a conflict of interest. At the hearing on the matter, Taylor and Harger testified. In addition to the facts stated above, Taylor testified that "Harger is actually a pretty good lawyer," and that Harger never threatened him. When asked if Harger ever told Taylor that Taylor had to plead guilty or no contest, Taylor testified, "No, no, he never told me I had to." Harger testified that Taylor "was hesitant about taking the plea agreement throughout the process" and "he was agitated on the day that he entered the plea." Taylor has maintained his innocence throughout.

Taylor vaguely testified about the "new evidence" he had received. He stated it was "just some information that I had found out about my cousin's best friend, slash, roommate. I met him in the county jail and he was telling me some information . . . [t]hat could help my case . . . . He said he would be more than happy to come testify on my behalf." There is no other information about the "new evidence" in the record.

The district court denied Taylor's motion to withdraw his plea. The court found that Taylor had not shown good cause as contemplated in K.S.A. 2014 Supp. 22-3210(d)(1). The court found several factors compelling: (1) Taylor was represented by competent counsel; (2) no evidence supported Taylor's claim that he was misled, coerced, mistreated, or unfavorably taken advantage of; and (3) the plea was entered fairly and was understandingly made.

4

The court did consider Taylor's claim of new evidence but found it was more of a conclusionary statement because Taylor did not go into any detail at the hearing. The court also considered Taylor's age, education, and experience with the court system. Taylor was 33 years old at the time of the plea, had an 8th grade education, and had 26 prior convictions.

In this appeal, Taylor must establish that the trial court abused its discretion in denying a presentence motion to withdraw plea. See *State v. Kenney*, 299 Kan. 389, 393, 323 P.3d 1288 (2014). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

The district court made thorough and accurate findings on this question. The court first noted: "[T]here is nothing in the evidence that supports [Taylor's] claim that he was misled, coerced, mistreated or unfavorably taken advantage of." The district court went on to recount the salient facts:

> "It is clear from the testimony that Mr. Harger did nothing to mislead or to coerce the defendant to accept the plea. The defendant initially rejected the plea agreement and then when it came back on the table he reconsidered it and accepted it. The Court notes that on State's Exhibit Number 1 that the defendant was given a copy of the plea agreement to review, evidently on January 4, 2014. At least that's what's noted in the notes here. On January 8, 2014, which would have been the date of trial, defense counsel reviewed the plea agreement with the defendant. It was signed and presented to the Court. The defendant claims he was pressured by Mr. Harger to enter into the plea agreement, but testified that no threats were made to him. He was never mistreated by counsel or jail staff [in regards to the plea]. The plea was entered freely and voluntarily. The defendant was concerned about the possible results if this matter went to trial and, as I recall, indicated he was scared about the potential results that can happen. The Court finds that the defendant understood what his pros and cons were if he was going to trial versus the plea agreement."

The district court accurately described the evidence in the record. At the motion to withdraw his plea hearing, Taylor was asked about what "pressure" he was under to take a plea. The following exchange occurred:

"Q. So, when the judge asked you if this plea agreement, entering into this plea agreement and entering a plea of no contest to this amended charge was your free and voluntary act, you said yes, correct?

"A. I think so, yes.

"Q. Okay. Because it was your free and voluntary act, correct?

"A. That's correct.

"Q. All right. And you knew exactly what you were pleading to, you're not alleging not having knowledge regarding that, correct?

"A. Can you repeat the question?

"Q. You know exactly what you were pleading to, correct?

"A. Yes.

"Q. However, you say that you were felt – you felt pressured?

"A. That's correct.

"Q. I guess I'm confused because where was the pressure coming from?

"A. Mr. David Harger. The fact that he said, Mr. Page, 'Jason, I think this is what you need to do. I think this is your best bet.' So, I said, 'Are you sure?' and he said, 'Yes.'

"Q. Okay. That is the pressure that you're talking about?

"A. Yes."

An attorney's advice is not necessarily pressure that amounts to coercion that overcomes a defendant's voluntary decision to plead no contest. In the absence of any showing that the attorney's advice was inaccurate or misleading, pressure from one's attorney does not provide a sufficient basis for the withdrawal of an otherwise voluntary plea. In *Wippel v. State*, 203 Kan. 207, 209, 453 P.2d 43 (1969), the court held that an attorney's advice that the petitioner would be prosecuted for bribery and his children would be placed in foster homes if he did not plead guilty, did not constitute coercion. Then, in *State v. Cox*, No. 106,502, 2012 WL 2924617, at *3 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1249 (2013), a panel of this court held that

6

counsel's advice that a plea was in the defendant's "best interest" because the defendant would otherwise receive a higher penalty did not constitute coercion.

When an attorney delivers harsh but accurate advice about the consequences of going to trial rather than taking a plea, that advice does not constitute undue influence. In *State v. Macias-Medina*, 293 Kan. 833, 834, 838, 268 P.3d 1201 (2012), the Supreme Court held that an attorney who told his client that a plea was in his "best interest" because jurors may be racially biased did not coerce his client into accepting a plea.

Taylor does not allege that Harger gave him inaccurate or misleading information with which to base his decision to plead. When asked if Taylor thought that Harger had manipulated evidence, Taylor stated, "Mr. Harger is actually a pretty good lawyer. I don't think he would do that." The record shows that after reviewing the evidence and preparing for trial, Harger and his staff gave Taylor candid advice that Taylor's chance of being acquitted was remote.

Harger did not tell Taylor that he *had* to accept a plea. Harger did not threaten Taylor. Rather, Harger told Taylor that the plea was his "best bet." Taylor had several days between when he signed Harger's advice form on January 4 and when he signed the plea agreement on January 8 to weigh the pros and cons of a plea. When faced with the possibility of a rape conviction and life sentence if he went to trial, Taylor made a choice to plead to the lesser charge.

Moreover, the same judge presided at the plea hearing and the motion to withdraw plea hearing. At the plea hearing, the district judge advised Taylor of his right to trial. The judge asked Taylor if anyone had made any threats, coerced him in any way, or made any promises to induce him to enter into a plea. The judge was able to observe Taylor's demeanor during his responses, something this court is unable to do.

7

Taylor has failed to present evidence of any inaccurate or misleading advice by Harger. The district court did not abuse its discretion in finding that Taylor's plea was made freely and voluntarily.

In sum, the district court's decision to deny Taylor's motion to withdraw his plea was well thought out and reasonable. It was based on a correct understanding of the law, and was supported by the record. Therefore, the district court did not abuse its discretion in denying Taylor's motion to withdraw his plea.

Affirmed.