NOT DESIGNATED FOR PUBLICATION

No. 113,257

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALVIN G. MITCHELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed April 1, 2016. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BUSER, J., and HEBERT, S.J.

*Per Curiam*:  Alvin G. Mitchell, who pled no contest to one count of aggravated battery, a severity level 7 person felony in violation of K.S.A. 2015 Supp. 21-5413(b)(1)(B), and one count of criminal damage to property, a severity level 9 nonperson felony in violation of K.S.A. 2015 Supp. 21-5813(a)(1), appeals the trial court's denial of his presentencing motions to withdraw pleas. On appeal, Alvin asserts that the trial court erred by denying his motions because he established good cause to withdraw his pleas. Alvin additionally appeals the trial court's decision to use his criminal history to increase his sentence without proving his criminal history to a jury. Alvin

1

asserts that this action violated his constitutional rights as stated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Nevertheless, both of Alvin's arguments are meritless. Accordingly,we affirm.

On May 23, 2014, Alvin was arrested and charged with one count of aggravated battery, a severity level 7 person felony in violation of K.S.A. 2015 Supp. 21-5413(b)(1)(B), and one count of criminal damage to property, a severity level 9 nonperson felony in violation of K.S.A. 2015 Supp. 21-5813(a)(1). On May 29, 2014, Alvin had his first appearance. The next day, Jama Mitchell was appointed to represent Alvin.

On July 15, 2014, the trial court held a preliminary hearing on Alvin's case. The only evidence presented at the preliminary hearing was the testimony of the alleged victim, Brooke Colling. Brooke testified that after a verbal dispute inside a friend's house, Alvin went outside, broke out the windows of her car, and then hit her over the head two to three times with a wooden object. Brooke explained that she received staples, stitches, and speech therapy because of her injuries. Following Brooke's testimony, the trial court found that there was probable cause to support that Alvin committed not only a severity level 7 aggravated battery, but also a severity level 4 aggravated battery under K.S.A. 2015 Supp. 21-5413(b)(1)(A). As a result, the trial court bound Alvin over on the higher severity level 4 aggravated battery and the criminal damage to property charges.

Immediately after the trial court's ruling, Alvin indicated that he wanted to negotiate a plea deal. Alvin signed a plea agreement and a "Defendant's Acknowledgment of Rights and Entry of Plea" form later that day.

Under the plea agreement, Alvin agreed to plead no contest to a severity level 7 aggravated battery and the criminal damage to property charge. In exchange, the State agreed to recommend that Alvin serve the presumptive sentence, which it believed to be

2

probation. The State further agreed to recommend that Alvin receive the low-number sentences on the grid for each count and that his sentences run concurrently. In his acknowledgment of rights form, Alvin admitted the following: (1) He "[knew] of no reason why [his] mental competence should be questioned"; (2) he knew the charges against him, discussed those charges with his attorney, and discussed possible defenses to those charges with his attorney; (3) he knew that if he went to trial, he would have the right to testify or not testify on his own behalf; (4) he alone made the decision to enter the plea agreement after discussing with his attorney all potential defenses, the legal options available, and the rights he was entitled to; (5) he believed his attorney did a good job "counseling and assisting" him and was satisfied his attorney's help and advice; and (6) he read or had read to him the acknowledgment form, understood its contents, understood the consequences of his plea agreement, and was entering the plea agreement because he believed it was in his own best interests.

On July 16, 2014, Alvin pled no contest to one count of aggravated battery and one count of criminal damage to property as stated under his plea agreement. Before the trial court accepted Alvin's pleas, during the plea colloquy, Alvin declared: (1) He understood the plea agreement; (2) he understood the consequences of entering his pleas; (3) he understood that he would have the right to testify if he went to trial; (4) he had no medical problems that would affect his ability to understand his pleas; (5) he was satisfied with Jama's work as his attorney; (6) he had no questions about the plea agreement as Jama had explained the plea agreement to him and answered all of his questions; and (7) he was not coerced or threatened to enter his pleas. At the end of the hearing, Jama moved to have Alvin's bond reduced. Before reducing Alvin's bond, the trial court asked Alvin whether he entered his pleas to get his bond modified. Alvin responded, "No."

On August 18, 2014, Alvin moved to withdraw his pleas. In his pro se motion to withdraw pleas, Alvin argued that he should be allowed to withdraw pleas because his

3

"plea was not fair, nor understanding, on his behalf." Alvin argued that Jama failed to tell him about his right to testify, failed to tell him about potential defense strategies, and failed to investigate a key witness named Victor Walker. Alvin argued that Jama refused to take his case to trial. Alvin additionally argued that his due process rights were violated because his first appearance was unnecessarily delayed. After Alvin filed this motion, the trial court appointed Alvin new counsel. On November 5, 2014, Alvin filed a second pro se motion to withdraw pleas. In this motion, Alvin reiterated the arguments in his first motion.

On November 6, 2014, the trial court held a hearing on Alvin's motions. At the hearing, Alvin testified that he entered his no contest pleas under duress because the jail infirmary did not give him his prescription medications while he was in custody. Alvin testified that Jama did not tell him that Victor would have testified that Brooke started the fight until after he had pled no contest. Alvin reasserted that his due process rights were violated because his first appearance was unnecessarily delayed.

On cross-examination, Alvin acknowledged that he was arrested on a Friday and the following Monday was Memorial Day. Alvin admitted that he and Jama went over his acknowledgment of rights and plea agreement forms. Alvin testified that he was not alleging that he did not know he had a right to testify. Alvin eventually admitted that he knew he could have testified on his own behalf if he had gone to trial. When the prosecutor asked Alvin about his responses to the trial court's questioning at the plea hearing, Alvin testified that he never agreed with the things he was telling the trial court. Alvin testified that he "just said anything so I could get out of jail so I could fight this." When the prosecutor asked Alvin if he remembered telling the trial court that he was not entering his pleas just so he could get a bond reduction, Alvin testified that he remembered. Then, the following exchange between the prosecutor and Alvin occurred:

4

"Q. [Prosecutor:] But what you are telling this court is you knew exactly what you were wanting to do on the day that you entered this plea and it was your intent to do that so you could get out and try to fight it?

"A. [Alvin:] Fight it back, yes.

"Q. [Prosecutor:] So it was your knowing and voluntary decision to enter into this and do this?

"A. [Alvin:] And—

"Q. [Prosecutor:] Yes or no?

"A. [Alvin:] Yes."

Jama testified that she never forced or threatened Alvin to enter his no contest pleas. Jama testified that it was always Alvin's choice to enter the pleas. Jama testified that she answered all of Alvin's questions. Jama also testified that Victor's testimony would not have helped Alvin because Victor had told the police that he did not see the physical fight between Alvin and Brooke.

After hearing this evidence, the trial court denied Alvin's motions to withdraw pleas. The trial court explained that it was denying Alvin's motions because nothing other than his own allegations supported the claims that he was coerced to enter his pleas, threatened to enter his pleas, under duress while entering his pleas, or not understandingly making his pleas. The trial court ruled that there was no unnecessary delay in holding Alvin's first appearance given that he was arrested on a Friday and Monday was Memorial Day. Furthermore, the trial court ruled that even if there was unnecessary delay, Alvin did not establish a due process violation because he failed to argue that he was prejudiced by the delay. The trial court found that Alvin was not under duress due to a lack of medication because he always seemed coherent and never alerted the trial court that he was having a problem when given the opportunity. The trial court also found that Alvin's complaints about Jama not investigating Victor were unfounded because Jama had investigated Victor and determined he would not help Alvin's case.

At sentencing, the trial court determined that Alvin had a criminal history score of category C. Based on his charges and his criminal history, Alvin's presumptive sentence was probation. The trial court sentenced Alvin in accordance with the terms of his plea agreement. In total, Alvin received 24 months' probation with an underlying prison term of 25 months.

*Did the Trial Court Err When It Denied Alvin's Presentence Motions to Withdraw Pleas?*

Under K.S.A. 2015 Supp. 22-3210(d)(1), "[a] plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." When determining whether a defendant has demonstrated good cause to withdraw his or her plea before sentencing, the court should consider: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014) (citing *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 [2010]). These factors should not be applied mechanically or to the exclusion of other factors. *Fritz*, 299 Kan. at 154 (citing *State v. Garcia*, 295 Kan. 53, 63, 283 P.3d 165 [2012]).

This court reviews the denial of a presentence motion to withdraw a plea for abuse of discretion. *Fritz*, 299 Kan. at 154.

> "Judicial discretion is abused if the judicial action (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (2012) (quoting *State v. Ward*, 292 Kan. 541. Syl. ¶ 3, 256 P.3d 801 [2011], *cert. denied* 132 S. Ct. 1594 [2012]).

The defendant has the burden of proving abuse of discretion. *Fritz*, 299 Kan. at 154. Moreover, this court does not "reweigh evidence or assess witness credibility," giving deference to the trial court's factual findings so long as those findings are supported by substantial competent evidence. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

On appeal, Alvin argues that the trial court abused its discretion by denying his motions because he established good cause to withdraw his pleas. First, Alvin alleges that he established good cause because "he was misled and coerced, entered the plea[s] under duress, and his plea[s were] not knowing or understandingly made." Second, Alvin alleges that he established good cause because he was under duress when he entered the pleas given that the jail infirmary had not been giving him his prescription medications. Third, Alvin alleges that he established good cause because his due process rights were violated when his first appearance was unnecessarily delayed. Lastly, Alvin alleges that he established good cause because Jama failed to tell him he had the right to testify, failed to advise him of potential defense strategies, and failed to investigate Victor as a potential witness.

Nevertheless, none of Alvin's arguments are persuasive. First, at the motion to withdraw plea hearing, Alvin testified that he knowingly and voluntarily entered his pleas. Alvin testified that he purposefully entered the pleas so he could get out of jail and fight his case. Alvin's admission seems to indicate that Alvin believed that he could do a better job defending himself than Jama. This admission, however, also confirms that Alvin did not and does not have good cause to withdraw his pleas. Alvin's admission proves that he understood his rights, he voluntarily entered his no contests pleas, and he was not being coerced or threatened to enter his pleas. Furthermore, his admission undermines any credibility he may have had regarding his remaining allegations.

7

Consequently, the trial court did not abuse its discretion by denying his motion to withdraw pleas given Alvin's admission.

Yet, even without Alvin's admission, it is readily apparent that the trial court did not abuse its discretion by denying Alvin's motions. Although Alvin argues that he did not knowingly enter his pleas, Jama testified that she explained the plea agreement to Alvin and answered all of Alvin's questions. Although Alvin argues that he was misled, coerced, and threatened, Jama testified to the contrary. At the plea hearing, Alvin never alerted the trial court that he was confused or that he was being misled, coerced, or threatened. Moreover, in the acknowledgement of rights form, Alvin acknowledged that he understood his rights, he understood the terms of his plea agreement, and he alone made the decision to enter the no contest pleas. Clearly, this evidence supports the trial court's decision to reject Alvin's arguments that his pleas were not knowingly or voluntarily made.

Regarding Alvin's medication argument, in his acknowledgement of rights form Alvin acknowledged that he "[knew] of no reason why [his] mental competence should be questioned." At the plea hearing, Alvin told the trial court that he did not have any medical problems that affected his ability to understand his pleas. In denying Alvin's motions, the trial court commented that it remembered Alvin was coherent at his plea hearing. Additionally, although the trial court did not take note of it in its finding at Alvin's preliminary hearing, Alvin told the trial court that he was now on his proper medications. It is highly unlikely that the jail suddenly stopped providing Alvin with his medications between his preliminary hearing on July 15, 2014, and his plea hearing on July 16, 2014. Consequently, the weight of the evidence supports that Alvin was not under duress due to a lack of medications. As a result, the trial court did not abuse its discretion by rejecting Alvin's argument.

8

Regarding Alvin's due process violation argument, Alvin has failed to establish that there was a due process violation. K.S.A. 2015 Supp. 22-2901(1) states that following the defendant's warrantless arrest, the defendant must be brought before a magistrate "without unnecessary delay." Because Alvin was arrested on the Friday of Memorial Day weekend, Alvin spent 3 days in jail before he had his first appearance. To establish that this 3-day delay was unnecessary under K.S.A. 2015 Supp. 22-2901(1), Alvin must prove that the delay was unwarranted and that he suffered prejudice as a result of the delay. See *State v. Scott*, 286 Kan. 54, Syl. ¶ 11, 183 P.3d 801 (2008). Here, regardless of whether the 3-day delay was unwarranted, Alvin has failed to establish that he was prejudiced by the delay. Before the trial court, Alvin never argued that he was prejudiced by the 3-day delay. Alvin only argued that the delay, in and of itself, violated his due process rights. Moreover, Alvin still fails to argue that he was prejudiced by the delay on appeal. Because Alvin failed to argue prejudice before the trial court and continues to fail to argue prejudice before this court, he has not established that his due process rights were violated by the 3-day delay; thus, Alvin has not proven that the trial court erred by rejecting this argument.

Finally, each of Alvin's allegations against Jama are contradicted by either his statements or Jama's testimony. Although Alvin argues that Jama failed to tell him he had a right to testify, Alvin conceded his knowledge about this right in the acknowledgement of rights form, at the plea hearing, and at the plea withdrawal hearing. Although Alvin asserts that Jama failed to advise him of potential defense strategies, Alvin acknowledged that he and Jama discussed all potential defense strategies in his acknowledgement of rights form, and he testified that Jama answered all of his questions at his plea hearing. Moreover, although Alvin alleges that Jama did not investigate Victor as a potential witness who could provide exculpatory testimony, Jama testified that she investigated Victor as a potential witness but determined that his testimony would not help Alvin's case. Based on the preceding evidence, it was reasonable for the trial court to reject Alvin's arguments concerning Jama's alleged failures as his counsel.

9

In sum, Alvin has failed to establish that the trial court abused its discretion when it denied his presentencing motions to withdraw pleas. As a result, we conclude that the trial court properly denied Alvin's motions to withdraw his pleas.

*Did the Trial Court Violate Alvin's Constitutional Rights When It Used His Criminal History to Increase His Sentence Without Proving His Criminal History to a Jury?*

Alvin argues that the trial court violated his constitutional rights as stated under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed 2d 435 (2000), when it sentenced him based in part on his criminal history without requiring his criminal history to be proven beyond a reasonable doubt to a jury. Alvin acknowledges that our Supreme Court has already decided this issue against him. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002) (holding that *Apprendi* does not apply to defendant's presumptive sentence that was based in part on defendant's criminal history score under the Kansas Sentencing Guidelines).

This court is duty bound to follow our Supreme Court precedent unless there is some indication that the court is departing from its previous position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September 14, 2015). There is no indication that our Supreme Court is departing from its decision in *Ivory;* see *Belone*, 51 Kan. App. 2d at 211. Consequently, the trial court did not violate *Apprendi* when it considered Alvin's criminal history without first proving the fact of his criminal history to a jury beyond a reasonable doubt.

Affirmed.