NOT DESIGNATED FOR PUBLICATION

No. 117,227

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD MANROE MORROW III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed March 9, 2018.
Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., PIERRON and LEBEN, JJ.

PER CURIAM: Richard Morrow appeals the district court's denial of his motion to withdraw his no-contest plea to one count of rape of a child under age 14, one count of rape, and one count of aggravated indecent solicitation of a child. The district court may allow a plea withdrawal for good cause when the defendant files the motion before sentencing, as Morrow did. Morrow contended that he didn't fully understand what he was doing when he entered his plea because his attorney hadn't adequately explained the options. But the district court disagreed after hearing testimony from both Morrow and his attorney.

We review the district court's denial of a motion to withdraw plea for abuse of discretion, and that occurs only when the district court based its decision on an error of fact or law or when its decision is so unreasonable that no reasonable person would agree with it. Here, the district judge who presided over Morrow's plea hearing also heard the testimony from Morrow and his attorney. And based on that testimony, the court found that Morrow understood the plea agreement and knowingly entered into it. We find no abuse of discretion in that decision.

FACTUAL AND PROCEDURAL BACKGROUND

Morrow was arrested in December 2014 and charged with six counts of felony sex offenses, one count each of: rape of a child under age 14; aggravated criminal sodomy of a child under age 14; aggravated indecent liberties with a child; rape; criminal sodomy; and aggravated indecent liberties. The State later added an additional count of aggravated criminal sodomy of a child under age 14 and one count of aggravated indecent solicitation of a child. All of the charges alleged that Morrow committed crimes between 2008 and 2014.

Under a plea agreement, the State dropped five of the eight charges and agreed to recommend Morrow a downward departure from the sentencing guidelines. Morrow pleaded no contest to one count of rape of a child under age 14, one count of rape, and one count of indecent solicitation of a child.

At his plea hearing, Morrow told the district court that he and his attorney had had ample time to discuss the plea agreement and that he understood the agreement. Morrow also told the court that he wanted to enter into the plea agreement, that nobody had promised him anything in exchange for his plea, and that he hadn't been coerced into pleading no contest. He denied being under the influence of drugs, alcohol, or anything else that could

2

affect his decision, and he confirmed that he understood the rights he was giving up by entering his plea.

After the plea but before sentencing, Morrow filed two motions on his own (without going through his attorney)—one alleging that his attorney hadn't had time to prepare his case, and the other claiming that his sentence constituted cruel and unusual punishment. When the court held a hearing on those motions, it noted that Morrow was behaving differently than he had at earlier proceedings. For the first time since the beginning of Morrow's case, Morrow suggested that he was having trouble understanding the proceedings against him. He told the court that he had "always had trouble in school" and suggested that his understanding might have been affected by a "couple car accidents" that he had been in. The court ordered a competency evaluation to make sure Morrow understood what was going on. After Morrow received his evaluation, the court found that Morrow was competent to proceed.

Since Morrow complained that his first attorney hadn't adequately prepared the case, that attorney withdrew and the court appointed a new attorney before sentencing. The new attorney filed a motion to withdraw Morrow's no-contest plea, arguing that: (1) Morrow didn't understand the terms of his plea agreement; and (2) Morrow was never notified of the potential maximum sentence for his crimes.

The court held an evidentiary hearing on Morrow's motion. Morrow testified that he thought he would have won if his case had gone to trial because he had a steady job and he was involved in a bus ministry. He also said that he had had no choice but to plead no contest if he wanted "a chance to be free one day . . . [and] function in society." Morrow said he didn't deserve to go to prison because he was a "very, very good person."

Morrow's first attorney also testified. He said that Morrow seemed to fully understand the proceedings before entering the plea. The attorney agreed that Morrow

had been slower than some of his clients, but that there had been no indication Morrow lacked an understanding of what was going on. The attorney summarized the thinking behind the plea:

> "I don't think that [Morrow] liked—I don't think he liked his options, you know, going over the evidence against him. I think the State has a pretty strong case against him. I think he realizes that. He doesn't want to go to prison for the rest of his life. He wasn't happy about the 20 years, but he realized that with good-time, time served, he was looking at about 16 years. It gives him a life afterwards. But—you know, I—I never told him it was hopeless and I always tell my clients that it's their life, it's their time. If they want a trial, we can do a trial. If they want a plea, we can get them a plea."

The court denied Morrow's motion, providing extensive oral findings at the end of the hearing. The court found that Morrow understood the potential sentences he could have received and made the plea agreement knowingly and voluntarily.

In sentencing, the court followed the plea agreement and sentenced Morrow to a total prison sentence of 240 months. Morrow then appealed to our court. The same judge handled Morrow's plea hearing, the evidentiary hearing for Morrow's motion to withdraw his plea, and the sentencing.

ANALYSIS

Morrow argues that the district court should have allowed him to withdraw his no-contest plea before he was sentenced because Morrow's first attorney failed to explain sufficiently what might happened if he chose to go to trial rather than accept the plea offer.

A district court may allow a defendant to withdraw his plea before sentencing if the defendant shows "good cause." K.S.A. 2016 Supp. 22-3210(d)(1). But whether a defendant

4

should be permitted to withdraw his plea is a judgment call that's left to the discretion of the district court. When reviewing a discretionary decision, we reverse only if no reasonable person would agree with the district court's decision or if its decision is based on an error of fact or law. *State v. Morrison*, 302 Kan. 804, 812, 359 P.3d 60 (2015).

When deciding whether a defendant showed good cause to withdraw his plea before sentencing, the district court must consider three factors, commonly known as the *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006); see *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Morrow bases his argument on appeal around the first and third *Edgar* factors. He doesn't claim that he was misled or coerced into pleading no contest.

First, Morrow claims that he didn't understand his plea because his attorney didn't explain what could happen if he declined the State's plea offer and went to trial instead. But the district court found that Morrow understood the options and what he was doing—and the record supports its conclusions:

- Before entering his plea, Morrow told the court that he had ample time to go over the plea agreement with his attorney. He also confirmed that his attorney had "adequately answered [his] questions to [his] satisfaction" before he entered his plea.

- At the hearing on Morrow's motion to withdraw his plea, Morrow's first attorney testified that he told Morrow what he tells all of his clients: "He's got three possible outcomes; he can go to trial and be convicted and spend life in prison, he can go to trial and be acquitted and walk free, or he can take a plea deal and go to prison for a term of years . . . ." The attorney also told the court that he and Morrow met about six times before the plea hearing.

Based on its interaction with Morrow and the testimony presented at the plea hearing, the district court wasn't persuaded by Morrow's claim that he didn't receive adequate representation. The court explained how the record showed that Morrow's attorney fully advised Morrow about the charges and the penalties he faced and that Morrow decided to plead no contest because of the risk involved with going to trial.

Second, Morrow argues that he didn't understand his plea agreement because of the allegedly insufficient information that his attorney had given him about what could happen at trial. The district court found that Morrow understood his plea agreement and how his plea would affect Morrow's rights as a defendant. Once again, the record supports the district court's findings:

- The court pointed out that Morrow had been an active participant in his plea hearing. For example, Morrow requested that the court deviate from the plea agreement and allow him to communicate with his daughters if they initiated the contact. The court explained how this request showed that Morrow understood the terms of his plea agreement well enough "to make changes and clarifications to the plea agreement as he saw in his best interest."
- Morrow's first attorney told the court that Morrow had discussed potential plea agreements with him "from our first jail visit" forward, indicating that Morrow had thought about potential plea agreements for an extended time period.
- Morrow filed two motions on his own behalf before he moved to withdraw his plea. From this, the court concluded that Morrow had "a pretty high knowledge of legal procedure" and was capable of advocating for himself.
- Morrow's first attorney also told the court that Morrow seemed to fully understand the proceedings against him. Although the attorney said that Morrow may have been slower than some other clients, he said there was no indication that Morrow didn't understand what was happening.

Finally, it's important to note that the same judge presided over both Morrow's plea hearing and the hearing on Morrow's motion to withdraw his plea. At the plea hearing, the court was able to observe Morrow's demeanor when he stated that he understood the charges and his rights as a defendant, as well as when Morrow said he was voluntarily entering his no-contest plea. So when Morrow testified that he didn't fully understand his options when he pleaded guilty, the judge was able to decide that Morrow's allegations didn't align with what happened at the plea hearing. See *State v. Macias-Medina*, 293 Kan. 833, 839, 268 P.3d 1201 (2012).

We review the district court's decision for abuse of discretion, keeping the *Edgar* factors in mind. Morrow's argument touched on two of those factors—whether he was represented by competent counsel at the time of the plea and whether the plea was fairly and understandably made. The court found that Morrow made a well-informed, conscious decision to negotiate a favorable plea agreement with the State rather than risk the possibility of being convicted and sentenced to life in prison. Morrow agreed at his plea hearing that his attorney provided him with adequate counsel and that he understood the choice he was making by pleading no contest. We find no abuse of discretion in the denial of Morrow's motion to withdraw the plea.

We affirm the district court's judgment.