NOT DESIGNATED FOR PUBLICATION

No. 124,582

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEPHAN RAY CROOKS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed February 3, 2023. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., BRUNS and WARNER, JJ.


PER CURIAM: Stephan Crooks pleaded guilty to two sex offenses, both of which carried presumptive sentences of life imprisonment, in exchange for the State's dismissal of several other serious charges. A few months later but before his sentencing hearing, Crooks moved to withdraw his plea, claiming he thought he would be receiving a shorter sentence and that he was pressured by his attorneys to enter the pleas. After holding an evidentiary hearing, the district court found that Crooks' claims were not credible and that he had knowingly, voluntarily, and understandingly pleaded guilty to these two crimes. We affirm the district court's decision.

1

Crooks was charged with 17 crimes involving indecent liberties with a child under the age of 14. One month before his case was set for a jury trial, Crooks entered into a plea agreement: The State would dismiss 15 of the charges against Crooks if he pleaded guilty to one count of aggravated criminal sodomy and one count of rape—both off-grid person felonies. The State would also recommend a sentence of life imprisonment with the possibility of parole after 554 months, based on the assumption that Crooks' criminal-history score would be B. The district court accepted Crooks' guilty plea after a hearing. This appeal concerns Crooks' efforts to withdraw that plea before he was sentenced.

*Crooks' Plea Hearing*

The district court held a hearing on whether to accept Crooks' plea in January 2020. The court informed Crooks that it wanted him to be comfortable and asked him to raise his hand if he had any questions for the court or attorneys. Throughout the hearing, the court extensively explained the plea process to Crooks, although he had pleaded in other cases and was therefore somewhat familiar with these proceedings.

During the hearing, Crooks confirmed that he discussed the charges with his attorneys, understood the consequences of pleading guilty, and was satisfied with his attorneys' services. The court then reviewed the rights Crooks would give up by pleading guilty. The court informed Crooks that the presumptive sentence for both aggravated criminal sodomy and rape is life in prison, a fine of up to $500,000, lifetime parole, and lifetime electronic-device monitoring. The court also explained that it is not a party to the plea agreement and is not bound by its terms. Crooks confirmed he understood the range of sentences he could receive by pleading guilty.

Crooks told the court he was entering the plea freely and voluntarily, and that he was afforded all the time he needed to consider it. The court received the Acknowledgment of Rights and Entry of Plea form, which Crooks signed. The prosecutor also read the plea agreement into the record so that Crooks could process it auditorily, and Crooks stated that the recitation accurately reflected his understanding of the deal. When Crooks stood by his decision to plead guilty to aggravated criminal sodomy and rape and acknowledged the factual basis for both charges, the court accepted his plea. As anticipated, the State dismissed the remaining charges in the 17-count complaint. It also dismissed another case in its entirety.

*Crooks' Presentence Effort to Withdraw His Plea*

Before sentencing, and around four months after he pleaded guilty, Crooks filed two pro se motions: a motion to dismiss one of his appointed attorneys and a motion to withdraw his plea. In the first motion, Crooks argued that his appointed attorney had forced Crooks to accept the plea agreement under duress. In the second motion, Crooks repeated the allegations against the attorney and added that he wished to withdraw his plea because he accepted it under duress. In Crooks' view, he was not allowed time to think over the plea offer and could not make an informed decision about it.

The district court held separate evidentiary hearings on both motions. The same judge that presided over the initial plea hearing presided over the evidentiary hearings.

At the hearing on Crooks' motion to dismiss his attorney, the attorney testified that she was not sure what gave rise to the duress allegation. The district court granted Crooks' request to dismiss the attorney but found no ethical concerns with her representation. And the court eventually appointed a different attorney, Steven Wagle, to represent Crooks on his plea-withdrawal motion.

3

At the hearing on Crooks' motion to withdraw his plea, Crooks and both of his previous attorneys—Whitney Bolden and Taryn Locke—testified. Crooks' version of the events surrounding the plea differed substantially from that of his counsel.

One of the inconsistencies between Crooks' testimony and that of his previous attorneys concerned Crooks' allegation that he thought that the plea agreement would result in a nine-year prison sentence—not off-grid sentences of life imprisonment with lifetime parole. Crooks testified that on the day he entered his plea, Bolden had planned to argue pretrial motions but changed direction when she found out the State was offering a plea deal. According to Crooks, Locke approached him with a sentencing grid and said something about a downward departure to a nine-year sentence. Crooks stated Locke did not guarantee that he would receive a nine-year sentence, but that "that's how [Crooks] was taking [what she said]." Crooks stated that it was not until he returned to his holding cell after the plea hearing that he realized that the plea agreement did not say he would receive a nine-year sentence. Later in his testimony, however, Crooks acknowledged that the prosecutor read the agreement aloud at the plea hearing, and the agreement stated: "The penalty for this offense is life in prison with parole eligibility after defendant has served 25 years in prison."

Locke testified that she did not tell Crooks that he would receive a nine-year sentence. And Bolden added that she never talked about a nine-year sentence and stated that there was no legal possibility that Crooks could receive such a sentence, given his criminal history.

Another inconsistency in the testimony involved whether Crooks was pressured to enter into the plea agreement. Crooks testified he told Bolden that he did not feel comfortable signing the plea agreement and asked if he could have a couple of days to go over it. According to Crooks, Bolden told him that they would argue the pretrial motions

4

that day or he would accept the plea deal. Crooks also stated that neither Bolden nor Locke threatened him in any way, but he felt pressured to take the deal.

Bolden did not recall Crooks asking for more time and stated that Crooks prayed about the plea offer and decided to accept it after asking many questions and discussing it for about an hour. Locke stated that Crooks did not mention not wanting to plea, and that if he had, she would have stopped the proceeding.

Crooks also asserted that he felt that Bolden was not prepared to take the case to trial. He stated that Bolden and Locke visited him only twice, for about five minutes each time, about continuing the jury trial. But Bolden stated she visited Crooks at least six to eight times. Bolden added that although she would have zealously defended Crooks at trial, video evidence against him would have caused a devastating result.

Finally, Crooks stated the reason he moved to withdraw his plea was because he is innocent and wanted to have a jury trial. At the same time, however, Crooks admitted during his testimony that the district court read the factual basis for his crimes at the plea hearing and that he confirmed that the facts provided were accurate.

After hearing this testimony, the district court denied Crooks' motion to withdraw his plea. The court found that Crooks' claim regarding the nine-year prison sentence was not credible and that he had not proven that he was pressured to plead guilty. At sentencing, the district court followed the plea agreement's recommendation and imposed—on each of the two counts—life imprisonment, with parole eligibility after serving 554 months and lifetime offender registration. Crooks now appeals the district court's denial of his plea-withdrawal motion.

DISCUSSION

Appellate courts review a district court's decision about a presentence motion to withdraw a plea for abuse of discretion. *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (2012). A district court abuses its discretion if its action is based on an error of fact or law, or if no reasonable person would agree with its decision. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). In our review, the judges of this court—who were not present at the evidentiary hearing to observe the witnesses' demeanor or hear their testimony—do not reweigh evidence presented to the district court or reassess the witnesses' credibility. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

A district court has discretion to allow a defendant in a criminal case to withdraw a guilty plea before sentencing if the person shows good cause as to why the plea should be set aside. K.S.A. 2021 Supp. 22-3210(d)(1). Kansas courts look to three nonexclusive factors—often called the *Edgar* factors after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006)—to determine whether a defendant has shown good cause to withdraw his or her plea. These factors consider (1) whether a defendant's attorney was competent; (2) whether a defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea agreement was fairly and understandingly made. 281 Kan. at 36.

Crooks argues that he has shown good cause for withdrawing his plea because he provided testimony on each of the three *Edgar* factors. But the district court found that Crooks' allegations were not credible. And the court concluded that none of the concerns motivating the *Edgar* factors was present in Crooks' case.

Most notably, the district court determined that Crooks was not forced to enter the plea deal under duress or deprived of adequate time to review it. To the contrary, Crooks was given "a lot of breaks during the plea to give him all the time he needed to consider whether he wanted to go through with [the plea]." And when the court asked Crooks if he

6

had the time he needed to discuss the plea with his attorney, Crooks responded, "Yes, sir."

The district court also specifically found that Crooks' claim regarding the alleged nine-year sentence was "not credible." The court noted that it was not logical that a nine-year sentence would have even been discussed. The prosecutor read the plea agreement into the record, with no mention of a nine-year sentence, and Crooks confirmed that the recitation accurately reflected the agreement. The court noted that it read the sentencing range for the two offenses to Crooks at the plea hearing, and Crooks acknowledged that he understood the sentence for his offenses—life in prison.

The district court found that although Crooks may now regret his decision, he entered into the plea knowingly, understandingly, and voluntarily. We agree with the district court's assessment and find no abuse of discretion. Crooks asks this court to disregard the district court's credibility findings and give greater weight to his testimony surrounding the plea hearing. But this court does not reevaluate the district court's credibility assessments or reweigh evidence, particularly when the same judge presided over the initial plea hearing and the hearing to withdraw that plea.

In his final argument on appeal, Crooks urges this court to discount the district court's findings about the plea hearing because Crooks merely gave "all the correct answers" to the district court's questions at that proceeding. Crooks made a similar argument to the district court, however, and that court—which had observed Crooks during the plea hearing and at the later evidentiary hearing—was not persuaded by his assertion. Rather, the court noted that Crooks had understood the plea agreement, and the positive and negative consequences of that plea, and had nonetheless decided to plead guilty to the two offenses.

The district court did not abuse its discretion when it found that Crooks had not shown good cause to withdraw his plea.

Affirmed.