NOT DESIGNATED FOR PUBLICATION

No. 115,040

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

NED NAMAUU,
*Appellant.*


MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed November 23, 2016. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., POWELL, J., and STUTZMAN, S.J.

*Per Curiam*: Ned Namauu pled guilty to one count of aggravated battery. He now appeals the district court's denial of his presentence motion to withdraw that plea. Namauu argues that because his plea was not knowingly made, it failed to meet the requirements of due process. He also argues that the district court violated his constitutional rights by using his criminal history score as a factor in his sentencing, when that criminal history had not been put before a jury. We find no error and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

On July 13, 2014, a woman called the Overland Park Police Department and reported that she was on the road behind a Ford pickup truck with a male driver, a female passenger in the middle, and another male on the passenger side. She told police that she saw both males striking the female in the middle and the male passenger was "wailing" on the female. At one point, she saw the passenger door open and the female attempted to jump headfirst out of the moving vehicle, but the male passenger pulled her back in by her hair. After that, the woman saw both men resume hitting the woman in the truck, which continued throughout the time she followed them.

An officer in a marked patrol vehicle located the Ford pickup truck and activated his lights and siren. The driver of the vehicle refused to stop and continued driving for several blocks. The police ceased pursuit for a short time. At one point the caller was stopped next to the truck at a light and made eye contact with the woman between the two men. She said the woman was crying hysterically, was being held down by the passenger, and looked like she was scared to death. The caller said she "begged" police to resume their pursuit and they did so, with emergency equipment activated, pulling directly behind the truck.

The driver still refused to stop his vehicle even though the police had turned on their lights and sirens. Eventually, the driver pulled into a driveway, exited the vehicle, and began walking towards a residence. The police took the driver into custody, and he was identified as Ronald Namauu (Ronald). The police also identified the other occupants of the vehicle as Ned Namauu (Namauu) and Sharmaine Namauu (Sharmaine). When the police spoke with Sharmaine, she was upset and crying, and an ambulance was called because she had visible injuries to her face and neck. Sharmaine informed the police that Ronald was her father and Namauu was her uncle.

On July 14, 2014, the Johnson County District Attorney charged Namauu with kidnapping, and the court appointed attorney Kelly Goodwin to represent him. On October 8, 2014, a preliminary hearing was held before the Honorable Timothy McCarthy. The State presented several witnesses to testify about the incident, but the victim, Sharmaine, did not testify. At the close of evidence, Goodwin argued that the victim's testimony about what happened was essential to the case and without it the State had failed to sustain its burden to show probable cause.

The court rejected Goodwin's argument and found the State had met its burden. The court found that the "combination of testimony by the eyewitness . . . , the alleged victim attempting to exit headfirst from the vehicle while it was moving, in conjunction with the statement made to the officer by Ned Namauu" provided probable cause. Namauu was bound over for a jury trial on the kidnapping charge, and he entered a plea of not guilty.

After the preliminary hearing, Namauu began plea negotiations through his attorney. With a category "A" criminal history score, Namauu faced a presumptive sentence of 233 months in prison for the kidnapping charge. The State agreed to amend the complaint and dismiss the kidnapping charge in exchange for a plea of guilty to aggravated battery. The State also agreed to recommend the standard presumed sentence of 32 months in prison. The parties reduced the agreement to writing and Namauu signed it.

On January 30, 2015, the parties again appeared before Judge McCarthy, who had presided over the preliminary hearing. The court asked Namauu about his understanding of the plea agreement and the amended charge and reviewed with him the constitutional rights that he would waive if he pled guilty. The court then accepted Namauu's guilty plea to the amended charge of aggravated battery.

After the guilty plea, but before sentencing, attorney Goodwin withdrew from the case and the court appointed Michael Bartee to represent Namauu. On June 16, 2015, Bartee filed a motion to allow Namauu to withdraw his plea. In the motion, Namauu argued that Goodwin did not provide competent representation because she failed to file a motion to dismiss on the grounds that the victim did not testify at the preliminary hearing. He also alleged he was coerced and unfairly taken advantage of in his decision to enter a plea of guilty and that he did not enter the plea fairly and knowingly because he did not understand he was pleading to a charge of aggravated battery and agreeing to serve 32 months in prison.

Judge McCarthy heard the motion on June 24, 2015. Namauu testified in support of his motion, and the State presented testimony from Goodwin. The court denied Namauu's motion to withdraw his plea and sentenced him to 32 months in prison, followed by 12 months of postrelease supervision. Namauu appeals, claiming: (1) the district court erred in denying the motion to withdraw his plea; and (2) the district court violated his constitutional rights by imposing a sentence based in part on his criminal history, without submitting that criminal history to a jury.

ANALYSIS

*The district court did not abuse its discretion when it denied Namauu's motion to withdraw his plea.*

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2015 Supp. 22-3210(d)(1). A presentence motion to withdraw a plea is judged on the "good cause shown" standard, which is an easier standard to meet compared to a postsentence motion to withdraw a plea. *State v. Macias-Medina*, 293 Kan. 833, 836-37, 268 P.3d 1201 (2012). The district court considers the following factors in determining whether there is good cause shown: (1) whether the defendant was represented by

4

competent counsel; (2) whether the defendant was misled, coerced, or taken advantage of; and (3) whether the plea was fairly and knowingly made. *State v. Anderson*, 291 Kan. 849, 855-856, 249 P.3d 425 (2011). All three factors do not need to be resolved in the defendant's favor. Furthermore, the district court can consider other factors in determining whether good cause is shown. 291 Kan. at 856.

"The decision to deny a motion to withdraw a plea lies within the sound discretion of the trial court." *State v. Harned*, 281 Kan. 1023, 1042, 135 P.3d 1169 (2006). An appellate court will not reverse a district court decision to deny a presentence motion to withdraw a plea unless the defendant demonstrates that the district court abused its discretion. See *State v. Kenney*, 299 Kan. 389, 393, 323 P.3d 1288 (2014); *Macias-Medina*, 293 Kan. at 836; *Anderson*, 291 Kan. at 855. Judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

In his motion to the district court, Namauu argued that his attorney failed to represent him competently because she did not file a motion to dismiss the case after the victim failed to appear to testify at the preliminary hearing. The record shows that Namauu's counsel did argue that point to the district court after the close of evidence, contending the State could not show probable cause without the victim's testimony. The district judge rejected that argument on its merits at the preliminary hearing and again did so when it was presented as a part of the motion to withdraw plea. The issue has been abandoned on appeal.

Namauu focuses his appeal on the argument that "there is not sufficient evidence to show that [he] understood the elements of aggravated battery as the[y] related to the facts of this case." Therefore, he asserts his plea did not comport with due process as it was not entered into knowingly.

5

The State responds that the record itself refutes Namauu's contention that he did not knowingly enter into his plea. Namauu had spoken with his attorney about the plea agreement, and the district judge made the necessary inquiries of Namauu when he entered into his plea. The State concludes that Namauu's entitlement to due process was observed and the district court did not err when it denied his motion to withdraw his plea.

At Namauu's plea hearing, the court informed him that the complaint had been amended to one count of aggravated battery, a severity level 7, person felony, and ensured that Namauu understood the charge to which he was pleading guilty. In relevant part the district judge had the following exchange with Namauu:

"THE COURT: In the amended complaint you are charged with aggravated battery, a level 7. Do you understand the charge against you?

"[A.] Yes.

"[Q.] Have you had a chance to discuss this with your lawyer and are you satisfied with her services?

"[A.] Yes.

"[Q.] In the amended complaint you are charged with a level 7 person felony which has a potential jail sentence between 11 and 34 months depending on your criminal history. Do you understand that?

"[A.] Yes.

"[Q.] I have a plea agreement that appears to have your signature on it. Have you had a chance to discuss this agreement with your lawyer?

"[A.] Yes."

Namauu also testified at the hearing on his motion to withdraw plea that he told the court he understood the charges against him:

"[The State]: [T]he Judge asked you a lot of questions at the plea. Is that right?

"A. Yes, he did.

6

"Q. And one of those questions, did he ask you if you understood the charge of aggravated battery?

"A. He said the charges, do you understand the charges? Yes.

"Q. You told him you understood what the charge was. Is that right?

"A. Yes.

. . . .

"Q. And you understand that amending the charge to aggravated battery, at least—had you gone to trial on kidnapping and been convicted, did you understand how many months you were facing?

"A. Yes.

"Q. How many?

"A. I think they had me at 247 months, something like that.

"Q. Somewhere around 20 years. Right?

"A. 20 years, yes.

"Q. But you entered a plea to a little less than 3 years. Is that right?

"A. Yes.

"Q. You're still okay with that. Is that right?

"A. Yes."

In spite of his responses to the court when he entered his plea, however, in the motion to withdraw that plea Namauu claimed he was "coerced and unfairly taken advantage of" and he did not understand that he was agreeing to serve 32 months in prison for aggravated battery. At the motion hearing, Namauu affirmed that he wanted to withdraw his plea because he felt he was tricked into entering the plea when he did not understand what he was doing. He asserted that his attorney had not shown him the amended complaint before he signed the plea agreement for a 32-month recommended sentence. He alleged that his attorney "just said it was going to be aggravated battery but she didn't—I didn't know how it was worded down on paper. So when I seen [*sic*] that, that's what made me change my mind but I already signed."

On cross-examination of Namauu at the motion hearing, the State clarified his argument:

7

"Q. . . . [Y]ou agreed to a plea where you would go serve 32 months.

"A. Yes.

"Q. You agreed to that and you're not complaining about that now.

"A. No.

. . . .

"Q. You're still okay with that. Is that right?

"A. Yes.

"Q. It's just you don't like the charge that you pled to.

"A. Yes. The way it's worded.

"Q. So if there was a different charge that would get you 32 months, you might still enter a plea on that. Is that right?

"A. Probably so.

"Q. So you're not complaining about the outcome, you just don't like the wording of the charge.

"A. Yes.

"Q. Even though you told the judge you understood the charge. Right?

"A. Yes.

"Q. You remember telling the judge you understood the charge.

"A. Yes."

Neither Namauu's attorney nor the district court explicitly went through each element of the aggravated battery charge at the plea hearing. However, his attorney had explained to him the nature of the charge and the conduct that supported it. She testified at the plea hearing about the process she went through in reviewing the plea agreement with Namauu:

"I had a copy of the plea that [the State] had written up. It was a pretty short little plea. I would talk to him about that.

"I talked to him about the grid. He understood that he was a criminal history A. I don't know if he completely agreed with it but he understood that's where the State was categorizing him. We looked at the numbers and I talked to him that [the State] w[as] going to dismiss the kidnapping charge and charge him with an aggravated battery which dropped it down to a level 7."

8

She also testified that she explained to Namauu the nature of the aggravated battery charge:

"I discussed with him what that meant, an aggravated battery, that he was pleading to essentially some of his physical contact that he had with [the victim] inside the truck before the truck pulled over . . . . I said that's what he was pleading to, he wasn't pleading to actually any kind of a kidnapping charge.

"I don't remember if I specifically went over with him the aggravated battery statute."

Finally, when asked if Namauu saw a copy of the amended complaint, she responded:

"A. I always put it right in front of them because the Judge always asked if they've had a chance to look at it so I'm sure I had it sitting in front of him with his copy of the plea.

"Q. At that point did he have any questions or objections about the language of the aggravated battery charge?

"A. No. He was actually pretty happy with the plea agreement."

At the plea hearing, the facts supporting the plea were addressed in this way:

"THE COURT: I would ask the State for a factual basis for the plea.

"[The State]: This Court heard the prelim in this case and the parties would stipulate that the facts heard that day by the Court would support this plea.

"THE COURT: Mr. Namauu, are you pleading guilty to Count I of the amended complaint because those facts are substantially true and you are guilty of the crime charged?

"[Namauu]: Yes.

"THE COURT: Have any threats or promises been made to you to induce you to make this plea today?

"[Namauu]: No.

9

"THE COURT: Are you pleading guilty voluntarily and as an act of your own free will?

"[Namauu]: Yes.

"THE COURT: How do you plead to Count I of the amended complaint?

"[Namauu]: Guilty."

Although Namauu now claims this was insufficient to satisfy his rights, he was present at his preliminary hearing and therefore was aware of the evidence that the State was offering in support of the aggravated battery charge. Moreover, though he claims a mere stipulation is not enough to enable him to connect the nature of the charge against him to the facts of his case, Namauu's attorney testified that she did explain to him his acts that supported the aggravated battery charge.

When the same judge presides over both the plea hearing and the hearing on the motion to withdraw plea, that judge is well-placed to compare the statements made by a defendant at the time of the plea with contradictory statements made in support of his motion to withdraw that plea. *Macias-Medina*, 293 Kan. at 839. The district court here ultimately found at the motion hearing that Namauu entered his plea of guilty knowingly, and thus denied his motion to withdraw his plea. The district judge addressed Namauu and explained the reasoning behind the ruling:

"I understand that is a stressful environment when you get asked questions by the Court as to whether you understand the charge against you and the potential.

"I do think that I was clear about the potential jail sentence on a level 7 and you responded to that. And I think you responded today that you're not contesting the amount of time but simply the language of the aggravated battery. But I think we did go through the specifics of that and I do believe that the plea was fairly and understandingly made in this situation."

When he made his plea, Namauu affirmed to the district judge that he understood the charge against him, that he had discussed the charge with his lawyer, and he was

10

satisfied with her services. He also said that he had a chance to discuss the plea agreement with her. Notably, at that time Namauu never protested, or even commented, that he had not actually seen the amended charge. And, although Namauu's counsel testified to her belief that he had the amended complaint before him at the plea hearing, if we assume he did not and only later saw the wording that he found objectionable, at no point did he specify to the district court—or has he set out in this appeal—what it was about the wording that was unacceptable. He did not complain about the crime of conviction, aggravated battery, only the "wording." Still, in seeking to withdraw his plea, Namauu claims that if he seen that wording, he would have rejected the plea deal that gave him the considerably reduced sentence with which he repeatedly said he was satisfied.

The district court had the opportunity to consider the original charge, the evidence at the preliminary examination, Namauu's statements and demeanor at the plea hearing, and his complaints and contrary testimony at the hearing on his motion to withdraw plea. The district judge was in the best position to assess all that information in ruling on the motion to withdraw plea. That beneficial vantage point would not matter, however, if the record did not support the district court's conclusion. After reviewing the record and Namauu's arguments, we find the record does support the district court's decision, and we find no abuse of discretion by the district court when it denied Namauu's motion to withdraw his plea.

*The district court did not violate Namauu's constitutional rights by imposing a sentence based in part on his criminal history, without submitting that criminal history to a jury.*

Namauu next argues, for the first time on appeal, that the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used his category "A" criminal history score to increase his sentence without requiring that it be proven to a jury beyond a reasonable

11

doubt. A constitutional challenge to the use of prior convictions for criminal history scoring can be heard at any time. *State v. Fischer*, 288 Kan. 470, 472, 203 P.3d 1269 (2009).

A claim of an *Apprendi* violation is a question of law over which this court has de novo review. *State v. Pennington*, 276 Kan. 841, 851, 80 P.3d 44 (2003); *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002). In *Apprendi*, the United States Supreme Court expressly carved out an exception to its general rule for prior convictions. As explained by the Kansas Supreme Court in *Ivory*: "[T]he fact of a prior conviction is a sentencing factor and not an element of the crime. Thus, the prior conviction need not be presented in the indictment and proven to a jury in order to be used by the court to increase the sentence imposed." 273 Kan. at 46. Therefore, the use of Namauu's criminal history to calculate his sentence did not violate his constitutional rights. *Ivory*, 273 Kan. at 46-48; see *State v. Fisher*, 304 Kan. 242, 264, 373 P.3d 781 (2016).

Namauu acknowledges that the Kansas Supreme Court conclusively decided this issue in *Ivory*, 273 Kan. at 45-48, but includes it to preserve it for federal review. We are duty bound to follow Kansas Supreme Court precedent, absent some indication that the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015.) There is no such indication from our Supreme Court, *Ivory* controls, and Namauu's argument is without merit.

Affirmed.