NOT DESIGNATED FOR PUBLICATION

No. 118,570

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

IAN JAMEEL NORVELL BLACK,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed December 21, 2018. Affirmed in part, reversed in part, and remanded.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Jon S. Simpson*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: Subject to the terms of a plea agreement, Ian Jameel Norvell Black pled guilty to two counts of attempted aggravated sexual battery and one count of domestic battery, third offense. After he entered his guilty plea but before his sentencing, Black filed a motion to withdraw his guilty plea and to set the matter for trial. The district court denied that motion. Black appeals, claiming the district court abused its discretion by denying his motion to withdraw his plea. For the reasons stated below, we affirm in part, reverse in part, and remand.

1

Black was charged with one count of rape, one count of aggravated criminal sodomy, and one count of domestic battery. At the preliminary hearing, the alleged victim, M.B., testified she was living with Black at the Topeka Rescue Mission at the time the crimes occurred. Black recently had been released from prison and was married to M.B. While Black had been in prison, however, M.B. had an affair with another man, T.W., and became pregnant. Black reportedly knew about the affair and the pregnancy and was upset about it, but he was willing to try to work things out with M.B. The two did not discuss the pregnancy very often, but when they did, Black encouraged M.B. to get an abortion.

On the evening of the attack, Black and M.B. were alone together in their room at the Topeka Rescue Mission when Black found a video of M.B. and T.W. on M.B.'s old phone. This discovery sparked another discussion about M.B.'s pregnancy. During the discussion, Black again told M.B. that he wanted her to get an abortion. She refused, and the conversation quickly escalated into an argument. As the argument wore on, Black became more upset and eventually struck M.B. on the left side of her face with enough force that she felt dizzy and saw "stars." He then pulled up a picture of M.B. and one of her female friends and told M.B. that he was going to make them both perform oral sex "and then he was going to . . . fuck her."

After showing her the picture, Black grabbed M.B. by her hair and pushed her head down towards his crotch. His penis was exposed and he forced M.B. into oral sex, telling her that if she refused he was going to "fuck [her] up." M.B. stated that she was afraid of Black and that she understood his comment to mean that he would hit her again if she did not do what he wanted. The forced oral sex lasted for approximately two to three minutes, after which Black pushed M.B. back onto the bed and climbed on top of her. M.B. reported that Black was crying and telling her that she had "broke him" and

2

"fucked up the marriage." Black then raised M.B.'s dress, exposing her genitals, and began to forcibly have sexual intercourse with her. This continued for approximately 10 additional minutes, during which time M.B. repeatedly told Black that she was afraid and that she did not want to have sex with him. Eventually, Black ended the assault and laid down on the bed next to M.B.

As soon as Black laid down on the bed, M.B. got up, left the room, and went downstairs to the front desk of the mission where she told a staff member that Black had hit her but refrained from mentioning the sexual assault. The staff member put M.B. in a separate room and told Black to stay away from her. Black initially hung around the mission but left soon after learning that M.B. had called the police. When the police arrived, M.B. told them about the attack, including the sexual assault. M.B. was transported to the hospital for an examination.

Based on the testimony set forth above, the district court found probable cause at the preliminary hearing to proceed to trial on all three counts. Black waived formal arraignment, and the court set the trial for August 31, 2015.

Immediately after the preliminary hearing, Black attempted to contact M.B. and was subsequently charged with two additional counts: one for intimidation of a witness/prevent testimony or attendance and one for violation of a protective order. Black was therefore facing a five-count complaint, that carried with it a potential punishment of 54 years in prison if convicted on all counts, when trial proceedings began on August 31, 2015.

On the day of trial, after the jury was selected but before it was sworn in, the State approached Black with a plea offer: if Black would plead guilty to two reduced counts of attempted sexual battery and one count of domestic battery, the State would dismiss the remaining two counts and recommend that Black be sentenced to a cumulative total of 59

3

months in prison. Black's attorney at the time, Joseph Huerter, testified later that the plea offer came about because M.B., who recently had given birth, was suffering from postpartum depression and was therefore not in a mental state conducive to providing testimony for the State as a witness. Black accepted the State's offer and pled guilty the next day to the amended charges. The district court accepted his guilty pleas, and the matter was set for sentencing on October 30, 2015.

Before sentencing, however, Black indicated that he wanted to withdraw his guilty plea and take the case to trial. Huerter subsequently filed a motion to withdraw as counsel, which the district court granted on October 30, 2015. The district court then continued the matter to allow time for Black to obtain new counsel. But before obtaining new counsel, Black filed a pro se motion to withdraw his plea. In support of this motion, Black argued that his plea was involuntary and he entered into the plea agreement without full knowledge of the charge or the sentence that could be imposed. Black's pro se motion also expressed a desire to go to trial because he was innocent.

After new counsel was appointed, Black, with the assistance of his new counsel, filed an expanded motion in which he argued that good cause existed to withdraw his plea because: (1) he consistently denied committing a sex crime and the case against him had weaknesses, (2) his former counsel provided ineffective assistance, and (3) emotional factors unduly influenced him to plead guilty at the time he entered his plea.

An evidentiary hearing on Black's motion was held over the course of three different days. At the close of the evidentiary hearing, the district court issued a written order denying Black's request to withdraw his guilty plea. Specifically, the district court found: (1) that Black failed to establish a claim of actual innocence; (2) that under the *Strickland* standard for ineffective assistance of counsel, Huerter's representation of Black was competent and that any deficiencies were not prejudicial to Black; and (3) that Black's claim that he was unduly influenced by emotional factors at the time he took the

4

plea was not supported by credible evidence. Following that denial, and in accordance with the plea deal, the district court sentenced Black to 59 months in prison. Black appeals from the district court's decision to deny his presentence motion to withdraw plea.

## STANDARD OF REVIEW

Generally, an appellate court will not disturb a district court's decision to deny a presentence motion to withdraw a plea unless the defendant can show the district court abused its discretion. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court, (2) the action is based on an error of law, or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Black bears the burden of establishing an abuse of discretion. See *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). This court does not reweigh evidence or assess witness credibility; we give deference to the district court's factual findings so long as those findings are supported by substantial competent evidence. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Nevertheless, we have unlimited review over whether the district court's discretionary decision was guided by erroneous legal conclusions.

## ANALYSIS

By statute, the district court has discretion to grant a defendant's presentence motion to withdraw a plea if the defendant shows good cause for doing so. K.S.A. 2017 Supp. 22-3210(d)(1). To determine whether good cause exists to grant a motion to withdraw filed before sentencing, the district court considers three factors: (1) whether competent counsel represented the defendant; (2) whether someone misled, coerced, mistreated, or unfairly took advantage of the defendant; and (3) whether the defendant

5

fairly and understandingly entered the plea. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The defendant does not need to establish all three factors to demonstrate good cause to withdraw the plea; the district court may also consider other factors in making its determination. *State v. Ebaben*, 294 Kan. 807, 812, 281 P.3d 129 (2012).

Black claims the district court abused its discretion in finding that the following factors did not establish the good cause necessary to grant his motion to withdraw plea: (1) his counsel failed to provide him competent representation, (2) he did not fairly and understandingly enter into his plea, and (3) he was innocent.

1. *Competent representation*

Black argued to the district court that counsel's failure to competently represent him was sufficient good cause to grant his motion to withdraw his plea. Finding defense counsel provided Black with competent representation, the district court held Black had failed to establish the requisite good cause necessary to grant the motion.

On appeal, Black argues the district court abused its discretion in finding his counsel competently represented him because the court's decision was the result of both legal and factual mistakes.

a. *Legal mistake*

Black claims the district court erred as a matter of law by evaluating the competency of Huerter's representation under the constitutional standard for ineffective assistance of counsel rather than the much less stringent lackluster advocacy standard that should have been applied under K.S.A. 2017 Supp. 22-3210(d).

6

As set forth above, the first *Edgar* factor to consider when evaluating whether good cause exists to grant a presentence motion to withdraw his plea is the competence of counsel's representation. 281 Kan. at 36. That factor, however, "should not be mechanically applied to demand that a defendant demonstrate ineffective assistance arising to the level of a violation of the Sixth Amendment [to the United States Constitution]." *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010). Indeed:

> "It is neither logical nor fair to equate the lesser K.S.A. 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional burden. The *Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet. Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea." 290 Kan. at 513.

By contrast, the constitutional standard for ineffective assistance of counsel requires a defendant to show that "(1) counsel's performance was deficient, and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial." *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

Here, citing *Bledsoe*, the district court first noted that to establish a claim for ineffective assistance of counsel, "a defendant must prove (1) that counsel's performance was deficient, that it fell below standard; and (2) that the deficiency was serious enough to prejudice the defendant and his [or her] ability to receive a fair trial." The district court then went on to find that Black "failed to meet his burden to establish the first ground— that counsel's conduct or performance was deficient." The district court also found that even if Huerter's performance was deficient, Black "would still have taken the plea" and therefore "was not prejudiced by any assumed failures of prior counsel." As a result, the district court concluded that Huerter "was competent in the advice and recommendations regarding [Black's] plea agreement."

7

The State concedes in its brief that the district court's analysis incorrectly applied the constitutional standard when, under K.S.A. 2017 Supp. 22-3210(d), it should have applied the much less stringent lackluster advocacy standard. The district court's finding that Huerter competently represented Black is therefore based on an error of law and constitutes an abuse of discretion by the district court.

Although conceding the district court abused its discretion based on an error of law, the State argues the district court's error was harmless and therefore does not warrant either reversal or remand. In support of this argument, the State points to a number of unpublished decisions by this court. See *State v. Tipton*, No. 115,442, 2017 WL 383437, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. 1330 (2017); *State v. McMillan*, No. 112,802, 2016 WL 463780, at *7-8 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1327 (2017); *State v. Brown*, No. 107,724, 2013 WL 195907, at *2-3 (Kan. App. 2013) (unpublished opinion). But each of the cases cited by the State are legally distinguishable from the case at hand. Specifically, none of the cases hold that the district court applied the wrong legal standard; instead, the cases hypothesize that if the district court had applied the wrong legal standard, such an error would be harmless. *Tipton*, 2017 WL 383437, at *3; *McMillan*, 2016 WL 463780, at *7-8; *Brown*, 2013 WL 195907, at *2-3. We agree with the decision made by a panel of our court; application of the wrong legal standard requires a reversal and remand. See *State v. Locke*, 34 Kan. App. 2d 833, 836, 125 P.3d 584 (2006). Accordingly, we remand this case with directions for the district court to apply the correct legal standard for evaluating the competency of counsel in a presentence motion to withdraw plea. See 34 Kan. App. 2d at 836 ("It is not [the Court of Appeals'] function to review the record to determine if [the defendant] established 'good cause' to withdraw his plea. [That] judgment must first be exercised by the district court.").

b. *Factual mistake*

At the hearing before the district court on the motion to withdraw plea, Black argued to the court that Huerter's failure to provide him with full access to discovery in this case established the good cause necessary to allow him to withdraw his plea. Specifically, Black pointed to discovery in the form of an audio recording of M.B.'s interview with police, which Black claimed was inconsistent with the written police report on the issue of whether the mess in the room at the shelter was caused by the kids (as stated in the audio recording) or by the assault (as stated in the police report). Black claimed he never would have considered taking the plea if he had been provided the audio recording establishing this inconsistency.

The district court was not persuaded by Black's argument. First, the court found Huerter did provide Black with a transcript of M.B.'s recorded statement "as part of the written discovery." Next, the court found Detective Brian Hill's report made no mention of a mess in the room, which the court found to be consistent with M.B.'s recorded statement regarding the cause of the mess. Finally, the court found that even if counsel was deficient as alleged, Black "would still have taken the plea" and therefore Black "was not prejudiced by any assumed failures of prior counsel."

On appeal, Black alleges the district court abused its discretion in finding his counsel competently represented him because its decision was based on factual mistakes. Black alleges the first factual mistake occurred when the district court found that Huerter provided Black with a transcript of M.B.'s recorded statement "as part of the written discovery." Black claims the district court's finding is not supported by the evidence in the record. The State concedes that, to the extent the district court was under the impression that Huerter provided written discovery to Black that included a verbatim transcript of M.B.'s recorded statement, it was a factual error.

9

Black alleges the second factual error occurred when the district court found Detective Hill's report made no mention of a mess in the room. The State concedes the court's finding that Detective Hill makes no mention of a mess in the room is factually incorrect. Indeed, Detective Hill's report makes direct reference to the cause of the mess in the room when, in the section describing the interview with M.B., it states: "[M.B.] had advised that the room was a mess from the assault and that there would be a torn up marriage license that [Black] tore up, a wash rag on the bed area and a pillow that was used."

Notwithstanding these two factual errors made by the district court, both of which the State concedes, the district court found that even if counsel was deficient as alleged, Black's claim that he would not have taken the plea but for the errors was not credible and therefore Black "was not prejudiced by any assumed failures of prior counsel." But as noted in the preceding subsection, the court's analysis incorrectly applied the constitutional standard of deficient performance and prejudice when, under K.S.A. 2017 Supp. 22-3210(d), it should have applied the much less stringent lackluster advocacy standard. Because we already have ordered the matter to be remanded based on a legal error, we direct the court on remand to consider only those facts supported by the record in applying the correct legal standard for evaluating the competency of counsel in a presentence motion to withdraw plea. See *Locke*, 34 Kan. App. 2d at 836 ("It is not [the Court of Appeals'] function to review the record to determine if [the defendant] established 'good cause' to withdraw his plea. [That] judgment must first be exercised by the district court.").

2. *Fairly and understandably enter into plea*

Black argues that the district court abused its discretion when it found that his pleas were fairly and understandably made. Specifically, Black claims the court's finding in this regard was based on the two mistakes of fact set forth above: the court's finding

10

that Black was provided with a transcript of M.B.'s recorded statement "as part of the written discovery" and that Detective Hill's report made no mention of a mess in the room and was therefore consistent with M.B.'s recorded statement regarding the cause of the mess.

In addition to the competence of counsel, another factor that the district court should consider when evaluating Black's presentence motion to withdraw his plea is whether the plea was fairly and understandably made. *Edgar*, 281 Kan. at 36. Our Supreme Court has held that the judge presiding over a plea hearing is in the best position to observe the defendant's demeanor at the hearing in order to compare it to the testimony and evidence presented at a later hearing on the defendant's motion to withdraw plea. *State v. Macias-Medina*, 293 Kan. 833, 839, 268 P.3d 1201 (2012). As a general rule, "appellate courts will not overturn a trial court's weighing of the evidence or assessment of witness credibility from a cold record." *State v. Schaefer*, 305 Kan. 581, 595, 385 P.3d 918 (2016).

At the hearing on the motion to withdraw his plea, Black argued he never would have entered the plea agreement if he had known about certain factual inconsistencies between the victim's recorded statement and law enforcement's description of the victim's statements provided to Black in the discovery process. In rejecting Black's argument, the district court specifically determined that Black was not credible when he claimed that he would never have pled guilty if he had known about and been given a chance to review the audio recording of M.B.'s statement prior to entering his plea. Specifically, the district court stated:

> "[T]he court believes that [Black] understood exactly what he was doing when he entered
> his pleas. He is relatively intelligent. While his spelling is not the best, but he appears [to]
> be fairly articulate and with a broad vocabulary. The court believes his primary goal was
> to avoid the possibility of one or two severely long sentences for Level 1 sex offenses

11

with a criminal history of 'A'. He met that goal by entering pleas to two Level 7 felonies and an unclassified felony with a probable combined 59-month sentence. While the court believes he is fairly intelligent, the court also believes he will say what he needs to now get his plea withdrawn. He lied to [M.B.], or states he did. He states he lied to (or was 'dishonest' with) the court at the time of the plea. The court does not find [Black] to be credible."

. . . .

"Based on all evidence that the court has seen and heard, the court finds that the outcome would not have been different. The court believes that there is so little new real information gained in the discovery that should have been available to [Black] through his counsel, that in the end, [Black] would still have had to weigh the possibility of one or two severely long sentences against the certainty of a much shorter sentence. The court finds that [Black] would still have taken the plea under those circumstances."

As is apparent from this excerpt from the district court's memorandum decision and order, the district court did not rely on any factual error in coming to the conclusion that Black fairly and understandably entered his plea of guilty. And based on our review of the record as a whole, a reasonable person could take the view adopted by the district court on this issue. Accordingly, we conclude the district court did not abuse its discretion in finding Black fairly and understandably entered his plea of guilty.

3. *Actual innocence*

As we noted at the outset, the district court is not limited to the three *Edgar* factors in deciding whether a defendant has demonstrated good cause to withdraw a plea. *Ebaben*, 294 Kan. at 812. In his third claim for relief on appeal, Black argues the district court abused its discretion in denying his motion to withdraw plea based on innocence, which necessarily establishes the good cause necessary to grant the motion. Claims of innocence are factual, not legal. *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014). Therefore, we give deference to the district court's factual findings with regard to Black's claim of innocence so long as those findings are supported by substantial

competent evidence. *Anderson*, 291 Kan. at 855. To that end, the court's memorandum decision and order stated as follows:

"CLAIM OF ACTUAL INNOCENCE

"A. [Black]'s Position

"[Black] argued in his written motion and testified at the hearing, that he is not guilty of rape or aggravated sodomy, and further denies he committed any act constituting a sex offense against [M.B.]. [Black] further argues there is no corroborating evidence of any kind, physical, forensic, or by eye witness testimony, and that the case comes down to his word against [M.B.]'s word about what happened or did not happen. [Black] also points out that another resident of the Rescue Mission, [J.K.], would have testified in [Black]'s favor in this, though there is no evidence to support this. [Black] concludes that a review of all the evidence—which [Black] was not provided until after his plea—'supplies the weakness of the facts against' [Black], with reference to the claims of ineffective assistance of counsel.

"B. State's Position

"The State argues that [Black]'s argument of actual innocence is 'weak tea.' The State points out that [Black] is no longer cloaked with the presumption of innocence; has been convicted of three felonies; and bears the burden to establish that he did not commit a sex offense against [M.B.].

"The State reviews [M.B.]'s preliminary hearing testimony about the acts committed against her by [Black]; the anger and jealousy regarding [M.B.]'s infidelity and pregnancy; and [Black]'s acknowledgement in his police interview, as well as his own testimony, about being angry and ripping up the marriage certificate. The State reviews a considerable volume of police reports and testimony.

"C. Court's Conclusion

"It is clear that [Black] has interpreted all the evidence in his favor. However, the court heard the preliminary hearing—for purposes of probable cause—and recalls the testimony of several witnesses who, if believed by a jury, could reasonably find that [Black] was indeed angry and jealous about [M.B.]'s infidelity and her refusal to get an abortion. [Black] initially denied—and continues to deny—that he committed any sex offense, much less the originally charged Rape and Aggravated Criminal Sodomy. The court rejects that it is just [Black]'s word against [M.B.]'s word. The preliminary hearing

13

included testimony of [C.R.] that [Black] acknowledged hitting [M.B.], but that the two then had make-up sex. [Black] denied to police that he had hit [M.B.], or that the two had sex that day.

"It is not really known what [J.K.] would testify about or how [J.K.] would do on cross-examination. [Black] did have a subpoena issued for [J.K.].

"The court also notes that in one of [Black]'s letters to [M.B.], written well after his plea and the filing of his pro se motion to withdraw his plea, [Black] admitted that he did not know what happened. . . . He admits that he 'smacked' her a couple of times, but that all he knew was that he 'put his hands on her.' He then states he 'was so fucking scared because (he) couldn't remember.' He then appears to believe it must have been consensual because there was only one time she 'ever denied me my pussy.' There were comments in the letter about him being 'so fucking angry' about a video on [M.B.]'s telephone of [M.B.] with the suggested father of the child. Again, he claimed he did not know what happened—but if everything she claimed happened, . . . he was so 'fucking sorry.' He then claims that 'for all these months ive (sic) been trying to remember but I cant (sic). Why not deny it all if I cant (sic) remember?!'

"The court recognizes that [Black] stated in a later letter . . . that he was 'lying his ass off' in the last letter, and that, as a matter of fact, he had been lying in most of his letters. [Black]'s letters and some of the recorded jail visits . . . indicate [Black] has his own credibility problem for a jury to consider. It is also clear that [Black] is trying to get [M.B.] to change her testimony. As noted earlier in one of the recorded jail visits, [M.B.] asks [Black] why she would change her mind and lie about what happened.

"[Black] testified that there are a number of inconsistencies in her various statements to law enforcement and others. Most of those are not necessarily inconsistencies in the form of contradictions, but rather, as appears common in the court's experience of hearing witnesses testify and be cross-examined, various things remembered and/or forgotten as multiple interviews are done, or different people asking questions a different way.

"The court has reviewed all exhibits admitted in this case. There are multiple examples in the letters, the recorded visits, and testimony in which [Black]'s statements are generally self-serving in order for him to get out of jail, to get back with [M.B.], and to get back with his daughters. One of those is the reference in the State's argument regarding State's Exhibit Nos. 7 and 8. [Black] also just wants to go back to the way things were before these events occurred in March 2015, and just have this all

14

disappear—to get the results he wants, not necessarily because, as he claims, nothing happened.

"The court finds and concludes that [Black] has not established a claim of actual innocence."

The district court thoroughly reviewed Black's claim of innocence and cited substantial competent evidence to support its conclusion that Black had failed to offer credible evidence to support his claim of innocence. We find that reasonable persons could share the district court's conclusion and that the court's decision was not based on an error of law or an error of fact. For these reasons, we conclude the district court did not abuse its discretion in denying Black's motion to withdraw plea based on his claimed innocence.

We affirm the district court's decision denying Black's motion to withdraw his plea based on Black's claim that he did fairly and understandably enter his plea and based on Black's claim of innocence. We reverse the district court's decision denying Black's motion to withdraw his plea based on Black's claim that counsel failed to provide him competent representation and remand that claim with directions for the district court to reconsider it by applying the correct legal standard for evaluating the competency of counsel in a presentence motion to withdraw his plea and by considering only those facts supported by the record.

Affirmed in part, reversed in part, and remanded.